# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BURNS F. MCFARLAND,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBIN MCFARLAND, et al.,<br><br>    Defendants. | No. C08-4047-MWB<br>No. C09-4047-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT KIM SCORZA'S MOTION FOR SUMMARY JUDGMENT** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. Absolute Judicial and Quasi-Judicial Immunity* . . . . . . . . . . . . . . . 7

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

At issue in the motion for summary judgment pending before this court, is whether a court-appointed individual, who was ordered to conduct a child custody evaluation as part of divorce proceedings, is entitled to absolute quasi-judicial immunity from suit.

## I. INTRODUCTION AND BACKGROUND

### A. *Factual Background*

The summary judgment record reveals that the following facts are undisputed. Plaintiff Burns H. McFarland ("Burns") is a resident of Mississippi. Defendants Kim Scorza ("Scorza") and Robin McFarland a.k.a. Robin Van Es ("Robin") are residents of Iowa. Burns and Robin were married on June 11, 2004. They have one son, HRBM. On June 4, 2007, Robin filed for divorce. On November 9, 2007, Robin filed an Application for Investigations, pursuant to Iowa Code § 598.12, in the Iowa District Court for Sioux County. On November 14, 2007, Robin amended her application to correct a typographical error. Robin's application, as amended, sought the court appointment of a person or agency to conduct an investigation of Burns and Robin and prepare a custody evaluation. Specifically, the application requested: "This Court should promptly order an investigation of both parties regarding the home conditions, parenting capabilities and other matters pertinent to the best interests of the child in this case." Amended Application For Investigations at ¶ 2, Defendant's App. at 10.

On November 26, 2007, Robin and Burns filed a Stipulation and Agreement Concerning Custody Evaluation in which they agreed that the Iowa District Court "should immediately order a full custody evaluation in this case including thorough and detailed psychiatric evaluations of both the Petitioner and the Respondent." Stipulation and Agreement Concerning Custody Evaluation at ¶ 1, Defendant's App. at 13. The Stipulation and Agreement also called for Robin and Burns to try to reach an agreement upon the appropriate agency or person to conduct the custody evaluation. If they could not agree, the Stipulation and Agreement called for Robin and Burns to each identify two persons or agencies qualified to conduct the custody evaluation and the Iowa District Court would select and appoint one.

Robin and Burns agreed that Bethany Christian Services of Northwest Iowa ("Bethany Christian") should be appointed to conduct the custody evaluation in their case and informed the Iowa District Court of their decision. On January 31, 2008, the Iowa District Court entered an Order for Custody Evaluation, stating in relevant part:

> IT IS THEREFOR ORDERED that pursuant to Iowa Code 598.12(4) Bethany Christian Services of Northwest Iowa and Kim Scorza are hereby directed and required to make an investigation and perform a custody evaluation as contemplated by the statute. The custody evaluation should include an investigation of both parties, to-wit: the Petitioner, Robin N. McFarland and the Respondent, Burns H. McFarland regarding home conditions, parenting capabilities and other matters pertinent to the best interests of the child [HRBM], born October 17, 2005. Bethany Christian Services of Northwest Iowa and Kim Scorza should prepare a thorough custody evaluation report which should be submitted to this court on or before March 31, 2008. Such written report will be made available to both parties by this Court. The written custody evaluation report shall be a part of the record in this case unless otherwise ordered by this Court. The custody evaluation should include thorough and detailed psychiatric evaluations of both the Petitioner and the Respondent along with all other pertinent and appropriate information.

Order for Custody Evaluation at ¶ 6, Defendant's App. at 20.

On March 28, 2008, Bethany Christian submitted a written custody evaluation prepared by Scorza. Scorza did not know either Robin or Burns prior to being retained by the Iowa District Court to prepare the custody evaluation. All of the work performed by Scorza was done pursuant to the court order and no work was performed prior to that order. Burns alleges that Scorza conspired with other defendants before evaluating him and agreed to provide a report that was biased and prejudiced against Burns in order to paint him in an unfavorable light.

### B. *Procedural Background*

On June 11, 2008, Burns filed his *pro se* Complaint in case no. C08-4047-MWB, against defendants Robin McFarland, Dori Groenendyk, and Robin's School of Dance & Tumbling. In that lawsuit, Burns alleges that Robin falsely accused him of domestic abuse in connection with their divorce proceedings and that Groenendyk and Robin's School of Dance & Tumbling conspired with Robin to slander, libel and defame Burns. Burns also alleges that defendants tortuously interfered with Burns's prospective business relations. On June 5, 2009, Burns filed his *pro se* Complaint in Case no. C09-4047-MWB, against defendants, including Scorza, Robin, Groenendyk, and Robin's School of Dance & Tumbling.[1] This second lawsuit also alleges actions taken by defendants in connection with the McFarland divorce. Specifically, Burns alleges that defendants conspired to slander, libel and defame him; to tortiously interfere with his business relationships; and to commit fraud and fraud in the inducement. On July 1, 2009, Case no. 08-4047-MWB was consolidated, pursuant to Federal Rule of Civil Procedure 42(a)(2), with Case no. C09-4047-MWB, because both cases involve common questions of law and fact.

On August 12, 2009, defendant Scorza filed her Motion for Summary Judgment on all claims. In her motion, Scorza asserts that, because she was appointed by an Iowa District Court to conduct a custody evaluation regarding Burns's son, she has absolute quasi-judicial immunity for all activities connected to the custody evaluation, including Burns's claims against her in this lawsuit. On August 25, 2009, Burns was granted leave to file an Amended Complaint by August 28, 2009. In the same order, Scorza was given until September 7, 2009, to supplement her motion, if desired, and the deadline for Burns to respond to Scorza's motion was extended to September 28, 2009. On August 27, 2009,

---

[1] This Complaint named 60 defendants.

Burns filed an Amended Complaint against defendants, including Scorza.[2] In his Amended Complaint, Burns sets out the following eight common law causes of action against the named defendants: (1) civil conspiracy (Count 1); (2) intentional infliction of emotional distress (Count 2); (3) invasion of privacy (Count 3); (4) libel (Count 4); (5) slander (Count 5); (6) tortious interference with business relations (Count 6); (7) negligent infliction of emotional distress (Count 7); and, (8) fraud and/or fraud in the inducement (Count 8). After the Amended Complaint was filed, Scorza did not file a supplement to her motion. Burns filed a timely resistance to Scorza's motion in which he argues that the court should decline to extend absolute quasi-judicial immunity to Scorza. Scorza, in turn, has filed a timely reply brief in support of her motion.

## II. LEGAL ANALYSIS

### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving

---

[2] While the Complaint named 60 defendants, the Amended Complaint reduced the number of defendants to 45.

party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering

6

whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). The court will apply these standards to Scorza's Motion for Summary Judgment.

### *B. Absolute Judicial and Quasi-Judicial Immunity*

Defendant Scorza seeks summary judgment on the ground that she is absolutely immune for her conduct in performing the court-ordered evaluation. Burns brings his claims against Scorza under Iowa common law. When state law creates a cause of action, state law also determines whether there is a defense of immunity, unless the state rule is in conflict with federal law. *See Ferri v. Ackerman,* 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."); *see* also *Davidson v. Cannon,* 474 U.S. 344, 359 (1986) ("A State can define defenses, including immunities, to state-law causes of action, as long as the state rule does not conflict with federal law."); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982) ("Of course, the State remains free to create substantive defenses or immunities for use in adjudication--or to eliminate its statutorily created causes of action altogether--just as it can amend or terminate its welfare programs."); *Vega-Mena v. United States*, 990 F.2d 684, 691 (1st Cir. 1993) (quoting *Ferri*, 444 U.S. at 198); *Brown v. City of Clewiston*, 848 F.2d 1534, 1542 n.17 (11th Cir. 1988) (same); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) ("The Constitution does not create a fundamental right

7

to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational."). In this diversity case, then, the court will ascertain and apply Iowa law in an effort to reach the same result that Iowa courts would reach.

"Iowa law has long recognized that judges have absolute immunity from damages for acts committed within their judicial jurisdiction." *Muzingo v. St. Luke's Hosp.*, 518 N.W.2d 776, 777 (Iowa 1994); *see Blanton v. Barrick,* 258 N.W.2d 306, 308 (Iowa 1977); *Osbekoff v. Mallory*, 188 N.W.2d 294, 299-300 (Iowa 1971); *Huendling v. Jensen*, 168 N.W.2d 745, 749, 750 (Iowa 1969). The Iowa Supreme Court has explained that:

> This immunity has been applied even when the judge is accused of acting maliciously and corruptly because as a matter of policy it is in the public's best interest that judges should exercise their function without fear of consequences and with independence.

*Muzingo*, 518 N.W.2d at 777; *see Blanton,* 258 N.W.2d at 308 ("This immunity applies even when the judge is accused of acting maliciously and corruptly because as a matter of policy it is in the public best interest that judges should exercise their function without fear of consequences and with independence.").

"[A]bsolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000) (quoting *Eades v. Sterlinske,* 810 F.2d 723, 726 (7th Cir. 1987)). This extension of absolute immunity to nonjudicial officers is often referred to as "absolute quasi-judicial immunity." *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005). The Supreme Court of Iowa has recognized quasi-judicial immunity and has extended it to nonjudicial officers when their actions were "integral to the judicial process." *Muzingo*, 518 N.W.2d at 777; *Estate of Leonard v. Swift*, 656

N.W.2d 132, 139 (Iowa 2003) ("Under Iowa law, a guardian ad litem is entitled to quasi-judicial immunity."); *Babbe v. Peterson*, 514 N.W.2d 726, 727 (Iowa 1994) (extending quasi-judicial immunity to court-appointed guardians ad litem). "This immunity "'rests on the theory that persons who are integral to the judicial process must be able to perform their functions without the intimidating effect of potential lawsuits.'"" *Estate of Leonard,* 656 N.W.2d at 139 (quoting *Babbe*, 514 N.W.2d at 727). In *Muzingo*, the issue before the court was whether court-appointed psychiatrists and hospitals, requested by an Iowa District Court to render an opinion regarding a patient's mental health, were entitled to absolute quasi-judicial immunity from suit. *Muzingo*, 518 N.W.2d at 776. The Iowa Supreme Court determined that the court-appointed psychiatrist and hospitals were entitled to quasi-judicial immunity because they were acting as "an arm of the court." *Id.* at 778. The court noted that the focus of its inquiry was "on the nature of the function performed, not the identity or title of a particular actor." *Id*. In reaching its conclusion that the court-appointed psychiatrists and hospitals were entitled to quasi-judicial immunity, the Iowa Supreme Court observed that:

> Without this immunity, mental health professionals would continually be subject to vexatious lawsuits any time a disenchanted citizen did not like the recommendation made regarding an individual's mental health. The threat of liability could undermine objectivity and independence and the professionals' willingness to accept court appointments.

*Id*.

Similar public policy considerations compel the court to conclude that persons or agencies appointed by a court, pursuant to Iowa Code § 598.12(4), to conduct a child custody evaluation has quasi-judicial immunity under Iowa law for actions taken in their

9

court-appoint capacities.[3] Absent absolute quasi-judicial immunity two problems are likely to develop in child custody disputes. First, persons or agencies will be reluctant to accept court appointments to conduct custody investigations. This will harm minor children who are the subject of custody disputes since, without thorough and comprehensive custody investigations, placement in that home setting which is in their best interests will be less likely to occur. Second, the threat of civil liability may taint the child custody investigator's opinions. The disinterested objectivity, so necessary for an accurate child custody determination, will cease altogether or be substantially impaired. As the Seventh Circuit Court of Appeals aptly explained, "a nonjudicial officer who is delegated judicial duties in aid of the court should not be a lightning rod for harassing litigation aimed at the court." *Dellenbach v. Letsinger,* 889 F.2d 755, 763 (7th Cir. 1989) (internal quotation omitted).

Although there is no Iowa case directly on point, courts in other jurisdictions have uniformly found social workers, psychologists and like individuals appointed by a court to assist in making child custody or visitation determinations to be immune from suit

---

[3] Iowa Code § 598.12(4) provides that:

> The court may require that an appropriate agency make an investigation of both parties regarding the home conditions, parenting capabilities, and other matters pertinent to the best interests of the child or children in a dispute concerning custody of the child or children. The investigation report completed by the appropriate agency shall be submitted to the court and available to both parties. The investigation report completed by the appropriate agency shall be a part of the record unless otherwise ordered by the court.

IOWA CODE § 598.12(4).

court-appoint capacities.[3] Absent absolute quasi-judicial immunity two problems are likely to develop in child custody disputes. First, persons or agencies will be reluctant to accept court appointments to conduct custody investigations. This will harm minor children who are the subject of custody disputes since, without thorough and comprehensive custody investigations, placement in that home setting which is in their best interests will be less likely to occur. Second, the threat of civil liability may taint the child custody investigator's opinions. The disinterested objectivity, so necessary for an accurate child custody determination, will cease altogether or be substantially impaired. As the Seventh Circuit Court of Appeals aptly explained, "a nonjudicial officer who is delegated judicial duties in aid of the court should not be a lightning rod for harassing litigation aimed at the court." *Dellenbach v. Letsinger,* 889 F.2d 755, 763 (7th Cir. 1989) (internal quotation omitted).

Although there is no Iowa case directly on point, courts in other jurisdictions have uniformly found social workers, psychologists and like individuals appointed by a court to assist in making child custody or visitation determinations to be immune from suit

---

[3] Iowa Code § 598.12(4) provides that:

> The court may require that an appropriate agency make an investigation of both parties regarding the home conditions, parenting capabilities, and other matters pertinent to the best interests of the child or children in a dispute concerning custody of the child or children. The investigation report completed by the appropriate agency shall be submitted to the court and available to both parties. The investigation report completed by the appropriate agency shall be a part of the record unless otherwise ordered by the court.

IOWA CODE § 598.12(4).

because their actions were integral to the judicial process. *See Meyers v. Contra Costa County Dept. of Social Servs.*, 812 F.2d 1154, 1159 (9th Cir. 1987) (holding that counselors appointed by a family conciliation court to mediate custody and visitation disputes, investigate matters pertaining to such disputes, and provide reports to the court were held entitled to quasi-judicial immunity for their actions within the scope of their duties because they were performing a judicial function at the direction of a court); *Williams v. Rapperport,* 699 F. Supp. 501, 508 (D. Md. 1988) (holding that psychiatrist and psychologist performing court-ordered custody evaluations performed a judicial function and enjoyed absolute immunity), *aff'd,* 879 F.2d 863 (4th Cir. 1989), *cert. denied,* 493 U.S. 894 (1989); *Hathcock v. Barnes*, 25 P.3d 295, 297 (Okla. Civ. App. 2001) (holding that a psychologist appointed by the court to assist in making a custody determination was immune from suit because the psychologist was performing a "function integral to the judicial process."); *Diehl v. Danuloff*, 618 N.W.2d 83, 90 (Mich. Ct. App. 2000) (holding that court-appointed psychologist ordered to conduct a psychological evaluation and submit a recommendation to the court in a child custody proceeding was entitled to absolute quasi-judicial immunity); *Lavit v. Superior Court,* 839 P.2d 1141, (Ariz. Ct. App. 1992) (holding that court-appointed psychologist who conducted child custody evaluation as part of divorce proceedings was entitled to absolute quasi-judicial immunity); *Howard v. Drapkin,* 222 Cal. App.3d 843, 847 (1990) (holding that psychologist had quasi-judicial immunity in case where parties to a custody dispute stipulated that the psychologist could act as an independent fact-finder and make non-binding recommendations regarding allegations of physical and sexual abuse to the presiding judge); *S.T.J. v. P.M.,* 556 So.2d 244, 248 (La. Ct. App. 1990) (holding that court-appointed psychologist who performed evaluations to aid court in determining child custody and visitation was entitled to absolute quasi-judicial immunity); *LaLonde v.*

*Eissner,* 539 N.E.2d 538, 542 (Mass. 1989) (holding that court-appointed psychiatrist who performed family visitation evaluation was entitled to absolute quasi-judicial immunity); *cf. Myers v. Morris*, 810 F.2d 1437, 1466-67 (8th Cir. 1987) (holding that guardians and therapists involved in child sexual abuse investigation "who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damage claims arising from their performance of the delegated functions."), *cert. denied*, 108 S. Ct. 97 (1987), *overruled on other grounds by Burns v. Reed*, 500 U.S. 478 (1991). Burns has not offered any contrary legal authority demonstrating that absolute immunity should not apply in this case.[4]

While Burns contends that Scorza, while acting in her quasi-judicial capacity and acting in concert with the other defendants, conspired against him, such allegations of a conspiracy with others will not defeat the defense of absolute judicial or quasi-judicial immunity. *See Dennis v. Sparks,* 449 U.S. 24, 27 (1980); *Moses v. Parwatikar,* 813 F.2d 891, 893 (8th Cir. 1987); *see also Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir. 1986); *Schepp v. Fremont County,* 900 F.2d 1448, 1451-52 (10th Cir. 1990); *Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir. 1985); *Holloway v. Walker,* 765 F.2d 517, 523

---

[4] In support of his position, Burns does direct the court's attention to the United States Supreme Court's decision in *Cleavinger v. Saxner*, 474 U.S. 193 (1985). *Cleavinger*, however, is not controlling authority. In *Cleavinger*, the Supreme Court declined to extend absolute judicial immunity to members of a prison discipline committee. *Id*. at 201. Scorza's position here, however, is fundamentally different from that of members of a prison disciplinary committee. Scorza prepared a report, at the Iowa District Court's direction, which was to serve an integral function to that court by providing the judge presiding over the McFarland divorce with impartial fact-gathering on the issue of custody and visitation. The prospect of liability from suit would seriously erode the ability of persons in Scorza's position to carry out their independent fact-finding function and thereby impair the presiding judge's ability to carry out his or her judicial duties.

(5th Cir.), *cert. denied,* 474 U.S. 1037 (1985). The Eighth Circuit Court of Appeals provides the following succinct explanation of the logic underscoring this rule:

> Exceptions to absolute immunity should not be created freely. That malicious or corrupt acts are protected, *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1217, 18 L. Ed. 2d 288 (1967), indicates how solidly the doctrine of absolute immunity is entrenched in our legal system. To defeat this doctrine by pleading a conspiracy would be to create an exception where none was intended. Clearly a judge who conspires to violate a person's constitutional rights acts maliciously or corruptly. However, the need to preserve the judge's independence requires a grant of absolute immunity. The same policy requires us to hold a court appointed psychiatrist immune.

*Moses v. Parwatikar*, 813 F.3d 891, 893 (8th Cir.), *cert. denied*, 108 S. Ct. 108 (1987). Accordingly, consistent with these authorities, the court concludes that Scorza is immune from suit based on her quasi-judicial role in Burns's divorce proceedings, and her Motion for Summary Judgment is granted.

### III. CONCLUSION

For the reasons stated above, defendant Scorza's Motion for Summary Judgment is **granted**. The court concludes that, because Scorza was court-appointed to assist in making a custody determination, she is immune from suit.

**IT IS SO ORDERED.**

**DATED** this 2nd day of November, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

13