**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BURNS F. MCFARLAND,

    Plaintiff,

vs.

ROBIN MCFARLAND, et al.,

    Defendants.

No. C08-4047-MWB
No. C09-4047-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS
DENISE HARRISON, ROBERT VAN
ES, RHONDA VAN ES, GERALD
VAN ES AND KIM VAN ES'S
MOTION TO DISMISS**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A.  Standards For A Motion To Dismiss* . . . . . . . . . . . . . . . . . . . . . . 7
   *B.  Analysis Of Burns's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *1.  Civil Conspiracy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *2.  Other claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         *a.  Defamation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         *b.  Tortious interference with business relations* . . . . . . . 20
         *c.  Intentional Infliction of emotional distress* . . . . . . . . 22
         *d.  Invasion of privacy* . . . . . . . . . . . . . . . . . . . . . . . 27
      *3.  Absolute privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

This case represents the federal blowback from the ongoing, contentious marital dissolution proceeding between plaintiff Burns F. McFarland ("Burns") and his wife, defendant Robin McFarland, a.k.a. Robin Van Es ("Robin"). Four of the named defendants in this case, who are caught up in the vortex of that dissolution storm, seek the dismissal of all claims against them, pursuant to Federal Rule of Civil Procedure 12(b), for failure to state a claim.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On June 11, 2008, Burns filed his *pro se* Complaint in case no. C08-4047-MWB, against Robin, Dori Groenendyk ("Groenendyk"), and Robin's School of Dance & Tumbling. In that lawsuit, Burns alleges that Robin falsely accused him of domestic abuse in connection with their divorce proceedings and that Groenendyk and Robin's School of Dance & Tumbling conspired with Robin to slander, libel and defame Burns. Burns also alleges that defendants tortuously interfered with Burns's prospective business relations. On June 5, 2009, Burns filed his *pro se* Complaint in Case no. C09-4047-MWB, against defendants, including Robin, Groenendyk, Robin's School of Dance & Tumbling, Denise Harrison ("Harrison"), Robert Van Es ("Robert"), Rhonda Van Es ("Rhonda"), Gerald Van Es ("Gerald"), and Kim Van Es ("Kim").[1] This second lawsuit also alleges actions taken by defendants in connection with the McFarlands' divorce. Specifically, Burns alleges that defendants conspired to slander, libel and defame him; to tortiously interfere with his business relationships; and to commit fraud and fraud in the inducement. On July 1, 2009, Case no. 08-4047-MWB was consolidated, pursuant to Federal Rule of Civil

---

[1]This Complaint named 60 defendants.

Procedure 42(a)(2), with Case no. C09-4047-MWB, because both cases involve common questions of law and fact. On August 27, 2009, Burns filed an Amended Complaint.[2] In his Amended Complaint, Burns again alleges the following claims against defendants: civil conspiracy (Count I); intentional infliction of emotional distress (Count II); invasion of privacy-false light (Count III); defamation-libel (Count IV); defamation-slander (Count V); tortious interference with business relations (Count VI); negligent infliction of emotional distress (Count VII); and, fraud and/or fraud in the inducement (Count VIII). In addition, Burns requests that punitive damages be assessed against defendants and that he be awarded his attorney fees and costs.

On September 21, 2009, Harrison, Robert, Rhonda, Gerald, and Kim (collectively 'the Moving Defendants") filed a motion to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket no. 102). In their motion, the Moving Defendants allege that Burns's Amended Complaint fails to state a claim for which relief can be granted. The Moving Defendants, alternatively, contend they are entitled to absolute immunity on account of their role as witnesses. Burns has filed a timely response in which he asserts that he has adequately pleaded factual allegations supporting his conspiracy claim and, as a result, the Moving Defendants are liable for the foreseeable conduct of each co-conspirator. Burns also argues that the Moving Defendants are not entitled to absolute immunity because they acted to intentionally harm him while acting outside the scope of their roles as witnesses. The Moving Defendants did not file a reply brief.

---

[2] The Amended Complaint names 42 defendants.

## B. Factual Background

On a motion to dismiss, the court must assume all facts alleged in Burn's Amended Complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, the following factual background is drawn from Burns's Amended Complaint in such a manner.

Burns is a resident of Mississippi. Robin, Harrison, Robert, Rhonda, Gerald, and Kim are residents of Iowa. Burns and Robin were married on June 11, 2004. They have one son, HRBM. Burns is a licensed attorney and his business involves providing legal and regulatory advice to hospitals and hospital systems. Burns is also the author of multiple Christian books.

On June 4, 2007, Robin filed for divorce. Burns and Robin's divorce case is pending. As part of the divorce proceedings, both Burns and Robin are seeking custody of HRBM. Robin sought to deny Burns custody of HRBM, and/or to severely limit Burns's visitation rights with HRBM. She also sought to run Burns "out of town." Robin instituted a conspiracy to achieve her goals of depriving Burns of custody and visitation with HRBM, and driving Burns to leave town. The conspiracy began in June 2007. As part of the conspiracy, Robin, Rhonda, Groenendyke, and Randy Waagmeester ("Waagmeester") formulated a plan and recruited others to carry it out. Robin, Groenendyk, Harrison, Robert, Rhonda, Gerald, Kim, and the other named defendants conspired with each other and other persons to deprive Burns of custody of HRBM and to impose unreasonable restrictions on his visitation with HRBM. The conspiratorial plan called for people to make false and disparaging statements about Burns and to prepare and execute sworn affidavits that contained false statements about Burns or statements that were made about Burns with reckless disregard for their truth or accuracy. Another goal of the conspiracy was to destroy Burns's reputation in the community, including those with

whom he was seeking to develop business relationships. Defendants agreed to accuse Burns of acts of physical, mental and emotional abuse. To that end, defendants made statements in which they accused Burns of committing acts of mental and physical abuse on Robin and HRBM, stealing money from Robin, and committing the crime of domestic abuse.

The allegations regarding domestic abuse were incorporated in a "petition for relief from domestic abuse" that was filed in Iowa District Court for Sioux County as part of Burns and Robin's divorce case. Robin, Rhonda, Robert and Groenendyke disseminated the accusations contained in the petition for relief from domestic abuse orally and in writing throughout the city of Sioux Center, Iowa. Defendants did so knowing that Burns was temporarily residing in Sioux Center and attempting to establish relationships with medical care institutions in the area. Robin filed the petition for relief from domestic abuse even though Burns had never assaulted her or committed any act of physical violence toward her.

In June 2007, Robin and Groenendyk sent out an email addressed to the parents of the children who attended Robin's School of Dance and Tumbling, Robin's business. The email was sent out to over 300 households using equipment from Robin's School or Dance and Tumbling and on that business's email account. The email contained false allegations that Burns was an abusive husband and that he had forced Robin to leave her home temporarily in order to "get away from" Burns's abuse. It stated that Robin "needs many affidavits from friends" and directed that "forms are available for pick up at Dori's house . . . Please return all affidavits to Dori's house by Friday morning." Amended Compl. at ¶ 9. As part of the conspiracy, defendants prepared, executed and signed under oath affidavits beginning on June 7, 2007 and continuing through August 2007, in which they attested to facts which were either knowingly false or facts which the affiant had no

knowledge. Defendants knowingly and voluntarily prepared their affidavits for the purpose of assisting Robin in denying Burns custody of HRBM, severely limiting his visitation with HRBM, and/or driving Burns from town. Denise executed her affidavit on August 13, 2007, Kim and Gerald on August 14, 2007, and Robert and Rhonda on August 15, 2007. Robin, Groenendyke, Gerald and other defendants repeated false allegations about Burns during their conversations with other individuals and solicited others to prepare false affidavits for Robin.

On July 27, 2007, in furtherance of the conspiracy, a false report was made to the Iowa Department of Human Services and Child Protective Services by or at the direction of Robin, Waagmeester and others in which Robin accused Burns of sexually molesting HRBM. Other actions taken in furtherance of the conspiracy included smashing the windshield of Burns's automobile, and flattening its tires, continuous harassment of Burns in public, defendants' forbidding their children from playing with HRBM, and spreading rumors that Burns is not a Christian and that he was an abuser, an adulterer, a thief and a criminal. Robin told a well-respected member of the community that Burns is not a Christian and had been engaged in an extramarital affair during his marriage to Robin. Neither of Robin's accusations are true. Also in furtherance of the conspiracy, Robert confronted Burns, telling him that there was nothing for him in Iowa, that he should pack his things, get out of town and go back to Mississippi. On August 15, 2007, Rhonda and Robert made false oral statements about Burns in furtherance of and as part of the conspiracy.

## II. LEGAL ANALYSIS

The Moving Defendants each seek dismissal of all claims asserted against them for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] After reviewing the standards for a 12(b)(6) motion to dismiss, the court will address the specific issues raised by The Moving Defendants' motion *seriatim*.

### A. Standards For A Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[4] In its decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant

---

[3]The parties do not argue that anything other than Iowa law should apply, and both Burns and the Moving Defendants utilize Iowa statutory law in their briefs. In the absence of a dispute between the parties, the court assumes Iowa law applies and, furthermore, notes that Iowa has the most significant relationship to this case because all of the events giving rise to this litigation occurred in Iowa. Therefore, the court turns to consideration of each of these tort claims under Iowa law.

[4]Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, this amendment did not change the standards for a Rule 12(b)(6) motion.

fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right

to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

## B. Analysis Of Burns's Claims

### 1. Civil Conspiracy

In response to the Moving Defendants' contention that the Amended Complaint fails to state a claim for which relief can be granted, Burns argues that he has adequately pleaded factual allegations supporting his conspiracy claim and, as a result, the Moving

Defendants are liable for the foreseeable conduct of each co-conspirator. Accordingly, the court must first address the adequacy of Burns's civil conspiracy claim.

Under Iowa law, "'[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful.'" *Wright v. Brooke Group, Ltd.*, 652 N.W.2d 159, 171 (Iowa 2002) (quoting *Basic Chems., Inc. v. Benson,* 251 N.W.2d 220, 232 (Iowa 1977); *see Locksley v. Anesthesiologists of Cedar Rapids, P.C.,* 333 N.W.2d 451, 456 (Iowa 1983) (quoting *Benson,* 251 N.W.2d at 232); *see also Adam v. Mt. Pleasant Bank & Trust Co.,* 387 N.W.2d 771, 773 (Iowa 1986) ("A conspiracy is established when two or more persons combine 'to accomplish an unlawful end or to accomplish a lawful end by unlawful means.'") (quoting *Countryman v. Mount Pleasant Bank & Trust Co.,* 357 N.W.2d 599, 602 (Iowa 1984)). As the Iowa Supreme Court further explained in *Wright*:

> "Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *Basic Chems.,* 251 N.W.2d at 233; *accord Adam v. Mt. Pleasant Bank & Trust Co.,* 387 N.W.2d 771, 773 (Iowa 1986). Thus, conspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert. *See John's Insulation, Inc. v. Siska Constr. Co.,* 774 F. Supp. 156, 162 (S.D.N.Y.1991) ("Allegations of a civil conspiracy, therefore, are proper only for the purpose of establishing joint liability by co-participants in tortious conduct."); 2 Dobbs § 340, at 936-37 (characterizing cases applying a civil conspiracy theory as employing a model of vicarious liability). Thus, the wrongful conduct taken by a co-conspirator must itself be actionable. *See John's Insulation, Inc.,* 774 F. Supp. at 161 ("A claimant must plead specific wrongful acts which constitute an independent tort."); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.,* 88 Md. App. 672, 596 A.2d 687, 700 (1991) ("[T]he act

10

> (or means) need only be 'of such a character as to create an
> actionable wrong.'" (citation omitted)); 16 Am. Jur.2d
> *Conspiracy* § 50, at 275-76 (1998) ("[I]f the acts alleged to
> constitute the underlying wrong provide no cause of action,
> then neither is there a cause of action for the conspiracy
> itself.").

*Wright*, 652 N.W.2d at 172.

The Iowa Supreme Court has recognized that § 876 of the Restatement (Second) of Torts provides the parameters for a claim of civil conspiracy. *See Wright*, 652 N.W.2d at 171-72; *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994); *see also Reilly v. Anderson*, 727 F.3d 102, 108 n.4 (Iowa 2006) (noting that the Iowa Supreme Court had "cited with approval section 876" many times). Section 876 provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he [] does a tortious act in concert with the other or pursuant to a common design with him.. . ." RESTATEMENT (SECOND) OF TORTS § 876(a). The principal element of a conspiracy is an agreement or understanding to commit a wrong against another. *Wright,* 652 N.W.2d at 172; *Ezzone,* 525 N.W.2d at 398; *Locksley,* 333 N.W.2d at 456; *Benson,* 251 N.W.2d at 233; *see also* Restatement (Second) of Torts § 876 cmt. *a* ("Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result."). The agreement alleged "must involve some mutual mental action coupled with an intent to commit the act that causes injury." *Ezzone,* 525 N.W.2d at 398 (citing *Adam v. Mt. Pleasant Bank & Trust Co.,* 387 N.W.2d 771, 773 (Iowa 1986)); *accord Locksley,* 333 N.W.2d at 456; *Benson,* 251 N.W.2d at 233. On the element of intent, the Iowa Supreme Court has instructed that:

> "While a civil conspiracy is based upon intentional activity,
> the element of intent is satisfied when a defendant knowingly
> and voluntarily participates in a common scheme to commit an
> unlawful act or a lawful act in an unlawful manner. There is

no such thing as accidental, inadvertent or negligent participation in a conspiracy. A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy. A defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees . . . to do its part to further those objectives, however, is liable as a conspirator. Once a defendant knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, that defendant may be held liable for any tortious act committed in furtherance of the conspiracy, whether such tortious act is intentional or negligent in nature."

*Wright*, 652 N.W.2d at 173 (quoting *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 894-95 (Ill. 1995) (citations omitted in original)). Moreover, it is unnecessary for the underlying wrongful act to be an intentional tort, but it must be in some way actionable in the absence of the conspiracy. *Wright,* 652 N.W.2d at 172-74. However, "unless actual damage has resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy, no civil action lies against anyone." *Southern N.Y. Ry., Inc. v. Fort Dodge, Des Moines, & S. Ry. Co.,* 316 N.W.2d 840, 844 (Iowa 1982) (citing *Benson,* 251 N.W.2d at 233).

In reviewing Burns's Amended Complaint, the court is mindful, as the Third Circuit Court of Appeals warned, "'that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances.'" *Capogrosso v. The Supreme Court of New Jersey*, ---F.3d---, 2009 WL 4110372, at *2-3 (Nov. 27, 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)); *see Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999) (noting that "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence."); *see also Weber v. Paul*, 40 N.W.2d 8, 11 (Iowa 1949) ("It is of course elementary that a conspiracy may be proven by circumstantial evidence. It is

frequently incapable of direct proof."). The court concludes that taking, as it must, the facts alleged in the Amended Complaint as true, Burns has stated sufficient facts, at this preliminary stage of the litigation, to support his conspiracy claim. First, Burns makes allegations of an agreement or understanding among defendants to undertake conduct resulting in harm to him. Specifically, Burns alleges that the conspiracy began in June 2007, when Robin, Rhonda, Groenendyke, and Waagmeester formulated a plan and recruited others to assist in carrying it out. The objective of their plan was to deprive Burns of custody of HRBM and/or to impose unreasonable restrictions on his visitation with HRBM, and "to run plaintiff out of town." Amended Comp. at ¶ 2. According to Burns,

> The scheme included causing other people to make false and disparaging statements against plaintiff, to prepare and execute sworn affidavits that contained false statements or statements that were made about plaintiff with a reckless disregard for truth or accuracy. The affiants made statements that were knowingly false or with reckless disregard for the truth of the claims made. In other words, numerous individuals that were part of the conspiracy prepared affidavits swearing to information about which they had no knowledge. The purpose of preparing and executing the affidavits was to assist Robin McFarland to deny custody of the minor child to plaintiff and to severely limit Plaintiff's right of visitation with his son. The individuals preparing and executing the affidavits under oath were not acting in good faith or with an honest belief that the statements contained in the affidavits were true.

Amended Comp. at ¶ 3.

Further, throughout his Amended Complaint, Burns alleges various acts by individuals that he claims were done for the purpose of denying him custody of HRBM and to restrict his visitation with HRBM in furtherance of this conspiracy and that these acts caused injury to him. Specifically, Burns alleges that in June 2007, Robin and Groenendyk

sent out an email to over 300 households of the children who attended Robin's business. The email contained false allegations that Burns was an abusive husband and that he had forced Robin to leave her home temporarily in order to "get away from" Burns's abuse and stated that Robin "needs many affidavits from friends" and directed that "forms are available for pick up at Dori's house. . . Please return all affidavits to Dori's house by Friday morning." Amended Compl. at ¶ 9. Then, on July 27, 2007, in furtherance of the conspiracy, a false report was made to the Iowa Department of Human Services and Child Protective Services by or at the direction of Robin, Waagmeester and others in which Robin accused Burns of sexually molesting HRBM. It is further alleged that, as part of the conspiracy, defendants prepared, executed and signed under oath affidavits beginning on June 7, 2007, and continuing through August 2007, in which they attested to facts which were either knowingly false or facts which defendants had no knowledge. Burns claims that defendants knowingly and voluntarily prepared their affidavits for the purpose of assisting Robin in denying him custody of HRBM, severely limiting his visitation with HRBM, and/or driving him from town. Moreover, Burns alleges that defendants agreed to accuse Burns of acts of physical, mental and emotional abuse and then made statements in which they accused Burns of committing acts of mental and physical abuse on Robin and HRBM, stealing money from Robin, and committing the crime of domestic abuse. It is alleged that Denise executed her affidavit on August 13, 2007, Kim and Gerald on August 14, 2007, and Robert and Rhonda on August 15, 2007.

Burns further avers that other actions taken in furtherance of the conspiracy included smashing the windshield of his automobile, and flattening its tires, continuously harassing him in public, defendants' forbidding their children from playing with HRBM, and spreading rumors that Burns is not a Christian and that he was an abuser, an adulterer, a thief and a criminal. Burns's allegations, though insufficient to survive summary judgment

or to prevail at trial, contain enough specificity to rise above speculation and involve sufficient facts to raise a reasonable expectation that evidence in support of his conspiracy claim will be revealed through discovery. *See Twombly,* 550 U.S. at 555-56. Thus, at this stage of the litigation, these allegations are sufficient to state a claim for conspiracy.

### 2. *Other claims*

Since allegations of a civil conspiracy have been properly pleaded here, each co-conspirator is responsible for any action in furtherance of the conspiracy performed by other conspirators. In other words, the actions that the Moving Defendants' co-conspirators are alleged to have taken in furtherance of the alleged conspiracy may be imputed to them, if those actions could be reasonably foreseen as a necessary or natural consequence of the conspiracy. *See Wright*, 652 N.W.2d at 173. One who knowingly joins a conspiracy, "takes the conspiracy as he finds it" and is liable for all acts previously or subsequently done in pursuance of the conspiracy. *Myzel v. Fields*, 386 F.2d 718, 738 n.12 (8th Cir. 1967) ("one who knowingly joins a conspiracy even at a later date takes the conspiracy as he finds it."), *cert. denied*, 390 U.S. 951 (1968); *see Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970) ("One who enters a conspiracy late, with knowledge of what has gone before, and with the intent to pursue the same objective, may be charged with preceding acts in furtherance of the conspiracy"); *In re Welding Fume Products Liab. Litig.*, 526 F. Supp.2d 775, 802 (N.D. Ohio 2007) (noting that "'[b]efore a person who joins an existing conspiracy will be held liable for what was previously done pursuant to the conspiracy, . . . it must be shown that he or she joined the conspiracy with knowledge of the unlawfulness of its object or of the means contemplated.'") (quoting 16 AM. JUR.2d *Conspiracy* § 57 (2007)); *Hawk v. Perillo*, 642 F. Supp. 380, 387 (N.D. Ill. 1980) (holding that once defendant "joined the conspiracy, it became a party to every act previously or subsequently performed by any

of the other conspirators."); *see also Aughey v. Windrem*, 114 N.W. 1047, 1049 (Iowa 1908) (holding that defendant could be held liable for previous acts of a conspiracy where he knowingly entered into the conspiracy after its inception). Keeping these conspiracy criterion in mind, the court turns to consider the sufficiency of Burns's pleadings of the underlying torts in his Amended Complaint.

### a. *Defamation*

In Counts 4 and 5 of the Amended Complaint, Burns has brought Iowa state common law claims for defamation, libel in Count 4 and slander in Count 5, against the Moving Defendants. The Moving Defendants argue that these claims are insufficient because Burns has failed to allege the defamatory statements made by them and to whom the statements were made.

Under Iowa law, defamation is

> "is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name. A cause of action for defamation is based on the transmission of derogatory statements, not any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property."

*Kiesau v. Bantz*, 686 N.W.2d 164, 175 (Iowa 2004) (quoting *Schlegal v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998). As this court has previously explained, defamation under Iowa law consists of the "twin torts" of "libel" and "slander," where "libel" is defined as malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose the person to public hatred, contempt, or ridicule, or to injure the person in the maintenance of the person's business, and "slander" is defined as oral publication of defamatory material. *Park v. Hill*, 380 F. Supp. 2d 1002, 1015 (N.D. Iowa 2005); *Lyons v. Midwest*

*Glazing, L.L.C.*, 235 F. Supp.2d 1030, 1043-44 (N.D. Iowa 2002); *accord Kiesau*, 686 N.W.2d at 174; *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004); *Delaney v. International Union UAW Local No. 94*, 675 N.W.2d 832, 839 (Iowa 2004); *Theisen v. Covenant med. Ctr, Inc.*, 636 N.W.2d 74, 83 (Iowa 2001); *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994). In order to establish a *prima facie* case of defamation, the plaintiff must prove that the defendant "'(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Kiesau,* 686 N.W.2d at 175 (quoting *Johnson v. Nickerson,* 542 N.W.2d 506, 510 (Iowa 1996)). The Iowa Supreme Court has recognized that:

> There are two kinds of libel: libel per se and libel per quod. In statements that are libelous per se, falsity, malice, and injury are presumed and proof of these elements is not necessary. *Vinson v. Linn-Mar Cmty. Sch. Dist.,* 360 N.W.2d 108, 115-16 (Iowa 1985). "An attack on the integrity and moral character of a party is libelous per se." *Wilson v. IBP, Inc.,* 558 N.W.2d 132, 139 (Iowa 1996).

*Kiesau*, 686 N.W.2d at 175. Similarly, the Iowa Supreme Court has recognized that statements may constitute "slander *per se*." *Barreca*, 683 N.W.2d at 116 (cataloguing Iowa slander *per se* cases).

Here, accepting all allegations in the Amended Complaint as true and drawing all reasonable inferences in the light most favorable to Burns, the court concludes that Burns has alleged sufficient facts to make out *prima facie* claims of libel and slander under Iowa law. Specifically, Burns alleges that in the course of the conspiracy, Robin "told a well-respected member of the community that Plaintiff 'is not a Christian and has been engaged in an extramarital affair during their marriage.'" Amended Comp. at ¶ 3. Burns alleges that neither accusation is true and were made with actual malice in an attempt to damage

his reputation. *Id.* Under Iowa law, such an accusation of adultery is defamatory *per se*. *See Arnold v. Lutz*, 141 Iowa 596, 598, 120 N.W. 121, 121 (1909). Although the *Arnold* decision was handed down over a century ago, the court has no doubt that its holding remains as viable today as the day it was rendered given that a number of other states continue to view allegations of adultery as defamatory *per se*. *See Green v. Rogers*, 917 N.E.2d 450, 459 (Illinois 2009) (noting that "words that impute a person has engaged in adultery or fornication" are considered defamatory *per se* under Illinois law); *Parrish v. Allison*, 656 S.E.2d 382, 389 (S.C. Ct. App. 2007) (holding that under South Carolina law "slander is actionable per se" where plaintiff is alleged to have committed adultery); *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. Ct. App. 2004) (holding that a statement that plaintiff had engaged in an extramarital affair was defamatory *per se* under Colorado law); *City of Fairbanks v. Rice*, 20 P.3d 1097, 1107 (Alaska 2000) (holding that statements that plaintiff had had an extramarital affair were defamatory *per se*); *Baskin v. Rogers*, 493 S.E.2d 728, 730 (Ga. Ct. App. 1997) (statements that plaintiff had "affairs" constituted slander *per se*); *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 312 (Mo. 1993) (holding that statements that insinuated that plaintiff was an adulteress were actionable as slander *per se* under Missouri law); *Gorman v. Swaggart*, 524 So.2d 915, 921 (La. Ct. App. 1988) (holding that statements imputing adultery are defamatory under Louisiana law); *Devlin v. Greiner*, 371 A.2d 380, (N.J. Super. Ct. 1977) (holding that private detective's report "imputing to plaintiffs an adulterous relationship, constitutes libel as a matter of law."); *Baird v. Dun and Bradstreet*, 285 A.2d 166, 171 (Pa. 1971)(report stating that plaintiff had been indicted for adultery was libelous *per se*); *see also Donati v. Queens Ledger Newspaper Group*, 659 N.Y.S.2d 306, (N.Y. App. Div. 1997) (reversing dismissal of defamation claim where plaintiff alleged that item in newspaper was capable of defamatory connotation that plaintiff had been engaged in a longstanding

extramarital affair). *But see Marleau v. Truck Ins. Exchange*, 37 P.3d 148, 156 (Oregon 2001) (holding that statement made to plaintiff's neighbors that plaintiff committed adultery was not slander *per se* because adultery is no longer a crime under Oregon law). Accordingly, construing these allegations liberally in favor of Burns, the court finds that they are adequate to state a cause of action for slander against the Moving Defendants.

Similarly, the court concludes that Burns has alleged sufficient facts to adequately state a claim for libel against the Moving Defendants. Specifically, it is alleged in the Amended Complaint that the Moving Defendants published written statements in which they accused Burns of "'stealing' money from defendant McFarland," as well as accusing him of committing other crimes. Amended Compl. at ¶ 81. Moreover, it is alleged that Robin and Dori, acting in furtherance of the conspiracy, sent an email communication to over 300 households in which Burns was accused of being physically abusive to Robin. Amended Compl. at ¶ 9. Under Iowa law, "[l]anguage charging a person with the commission of a crime is slanderous *per se* when the crime charged is indictable, and it must be a crime that involves moral turpitude or one which subjects the party charged to a sentence of incarceration." *Rees v. O'Malley*, 461 N.W.2d 833, 835 (Iowa 1990) (citing *Amick v. Montross,* 220 N.W. 51, 54 (Iowa 1928)). Thus, such accusations are libel *per se* under Iowa law because theft and domestic abuse assault are both crimes which subject the party charged to a possible sentence of incarceration. *See* IOWA CODE § 708.2A (setting mandatory minimum sentence for anyone convicted of domestic abuse assault); IOWA CODE § 714.2 (setting out the degrees of theft under Iowa law). Therefore, applying the Iowa Supreme Court's test in *Rees and Amick,* the statements alleged in the Amended Complaint are libel *per se* and adequate to state a cause of action for libel against the Moving Defendants. Accordingly, this portion of the Moving Defendants' motion to dismiss is denied.

### b. Tortious interference with business relations

The Moving Defendants also seek dismissal of Burns's claim of tortious interference with business relations, contending that Burns has failed to provide the name of a business or person with whom the Moving Defendants interfered. As this court has observed, under Iowa law,

> [t]he elements of a claim of tortious interference with existing contracts . . . are the following: (1) the plaintiff had a valid contractual relationship with a third party; (2) the defendant knew of that relationship; (3) the defendant intentionally interfered with that relationship; (4) the defendant's action caused the third party to breach its contractual relationship with the plaintiff or disrupted the contractual relationship between the third party and the plaintiff by making performance more burdensome or expensive; and (5) the amount of damages. *See, e.g., Grimm v. U.S. West Communications, Inc.,* 644 N.W.2d 8, 11-12 (Iowa 2002); *Revere Transducers, Inc. v. Deere & Co.,* 595 N.W.2d 751, 763 (Iowa 1999). . . . The elements of the tort of interference with a prospective business advantage or contractual relationship . . . are the following: (1) the plaintiff had a prospective contractual or business relationship; (2) the defendant knew of the prospective relationship; (3) the defendant intentionally and improperly interfered with the relationship; (4) the defendant's interference caused the relationship to fail to materialize; and (5) the amount of resulting damages. *See, e.g., Blumenthal Inv. Trusts v. City of West Des Moines,* 636 N.W.2d 255, 269 (Iowa 2001).

*Helm Fin. Corp. v. Iowa Northern Ry. Co.*, 214 F. Supp. 2d 934, 996 (N.D. Iowa 2002) (citations to California decisions identifying identical elements for the versions of the tort under California law deleted); *accord Green v. Racing Ass'n of Central Iowa*, 713 N.W.2d 234, 243 (Iowa 2006) (identifying the elements of "intentional interference with an existing contract" as the following: "(1) plaintiff had a contract with a third-party; (2) defendant

knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.") (quoting *Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 399 (Iowa 2001), in turn quoting *Jones v. Lake Park Care Ctr., Inc.,* 569 N.W.2d 369, 377 (Iowa 1997)).

As previously mentioned, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . .'" *Bell Atlantic,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). In *Bell Atlantic,* the Supreme Court reiterated the pleading standard, requiring in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 550 U.S. at 570. Moreover, the Court in *Bell Atlantic* explicitly disclaimed that it was "requir[ing] inheightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.; see Boykin v. Keycorp,* 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayer, J.) (noting that the Court in *Bell Atlantic* "explicitly disavow[ed] that Rule 8(a) requires any plaintiff-let alone a *pro se* plaintiff-to plead 'specific facts.'") (quoting *Bell Atlantic,* 550 U.S. at 570). The court concludes that Burns's Amended Complaint alleges sufficient facts to state a plausible claim of tortious interference with business relations. Under *Bell Atlantic,* the court must consider whether Burns has made factual allegations that state a plausible ground for relief. *Bell Atlantic,* 550 U.S. at 564 n. 8. Although Burns's Amended Complaint is not as rich with detail as one might prefer, it need only set forth sufficient facts to support plausible claims. *Id.* This it does. Here, Burns alleges that, as a result of the defamatory statements made by members of the conspiracy, possible customers as well as current customers of his business, HealthOne,

Inc., refused to do, or continue to do, business with his company. Amended Compl. at ¶¶ 87-88, 91. He further alleges that the conspirators published their defamatory statements with the intent to interfere with Burns's business relationships. *Id.* at ¶ 87. In addition, Burns alleges that: "Defendants knew first hand of the prospective business relations that plaintiff has been cultivating, and in fact are personally acquainted with and have known for years many of those to whom they defamed the plaintiff." Amended Compl. at ¶ 89. These allegations sufficiently put the Moving Defendants on notice of Burns's tortious interference with business relations claim, and the grounds upon which it rests, thereby complying with Rule 8. Accordingly, that part of the Moving Defendants' motion to dismiss Burns's tortious interference with business relations claim is denied.

### c. *Intentional Infliction of emotional distress*

Next, the court takes up Burns's claim for intentional infliction of emotional distress. The Iowa Supreme Court has explained that:

> To establish a prima facie claim for intentional infliction of emotional distress the plaintiff must satisfy the following four elements: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *Steckelberg v. Randolph,* 448 N.W.2d 458, 461 (Iowa 1989).
>
> Before defendants' conduct can be considered outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harsha v. State Savs. Bank,* 346 N.W.2d 791, 801 (Iowa 1984). Outrageous conduct must be established by substantial evidence. *Vinson v. Linn-Mar Community Sch. Dist.,* 360 N.W.2d 108, 118 (Iowa 1984).

*Fuller v. Local Union No. 106 of United Broth. of Carpenters,* 567 N.W.2d 419, 423 (Iowa 1997); *see Barreca v. Nickolas*, 683 N.W.2d 111, 124 (Iowa 2004); *Ette ex rel. Ette v. Lin-Mar Comty. Sch. Dist.*, 656 N.W.2d 62, 70 (Iowa 2002); *Fuller v. Local Union No. 106 of United Bhd. of Carpenters and Joiners*, 567 N.W.2d 419, 423 (Iowa 1997); *Ollinger v. Bennett*, 562 N.W.2d 167, 172-73 (Iowa 1997); *Lamb v. Newton-Livingston, Inc.*, 551 N.W.2d 333, 338 (Iowa Ct. App. 1996); *VanBaale v. City of Des Moines,* 550 N.W.2d 153, 156 (Iowa 1996); *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996); *Dickerson v. Mertz*, 547 N.W.2d 208, 214 (Iowa 1996); *Marks v. Estate of Hartgerink*, 528 N.W.2d 539, 546 (Iowa 1995). The Moving Defendants seek dismissal of this count only on the ground that Burns has not adequately pleaded the first element of such a cause of action, outrageous conduct. Burns disputes the Moving Defendants assertion, contending that he has more than adequately alleged conduct sufficiently outrageous as to cause him emotional distress.

The Iowa Supreme Court has instructed that "'it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous.'" *Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 183 (Iowa 1991) (quoting *M.H. By and Through Callahan v. State,* 385 N.W.2d 533, 540 (Iowa 1986)); *see also Mills v. Guthrie County Rural Elec.,* 454 N.W.2d 846, 849 (Iowa 1990). The court further explained that for conduct to be outrageous, it must be "'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Cutler,* 473 N.W.2d at 183 (quoting *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 636 (Iowa 1990); *see also Engstrom v. State,* 461 N.W.2d 309, 320 (Iowa 1990) (quoting *Vinson v. Linn-Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984)). Thus, the Iowa Supreme Court has required an extreme of egregiousness to elevate (or downgrade) mere bad

conduct to the level of outrageousness. *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 198 (Iowa 1985).  Indeed, the Iowa court has observed that

> [t]he tort law should encourage a certain level of emotional toughness. "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46, comment d, *supra.* "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1035 (1936).

*Northrup,* 372 N.W.2d at 198-99 (quoting *Meyer v. Nottger,* 241 N.W.2d 911, 918 (Iowa 1976)).

In *Northrup,* the court looked to and quoted extensively from the Restatement (Second) of Torts § 46, comment d, for a statement of the level of bad conduct necessary to be held to be outrageous:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
>
> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Northrup,* 372 N.W.2d at 198; *see also Van Baale,* 550 N.W.2d at 156 (quoting Restatement (Second) of Torts § 46, comment *d*). Iowa courts have held, as the Restatement suggests, that it is not even sufficient that the conduct in question would have entitled the plaintiff to punitive damages. *Mills v. Guthrie County Rural Elec. Coop. Ass'n,* 454 N.W.2d 846, 850 (Iowa 1990) (citing *Vinson,* 360 N.W.2d at 118).

In reviewing Iowa case law, it is at once evident that a showing of outrageousness is difficult to make. As this court has previously observed, "[i]t is a simpler matter to discover what kinds of behavior the Iowa Supreme Court has held insufficiently outrageous to sustain the tort than it is to find out what kind of behavior is sufficiently egregious." *Chester v. Northwest Iowa Youth Emergency Serv. Ctr,* 869 F. Supp. 700, 710-11 (N.D. Iowa 1994) (detailing numerous Iowa cases in which the alleged conduct was not found to be sufficiently outrageous, including *e.g., Cutler,* 473 N.W.2d at 183 (letter advising partner who had suffered from mental illness that he could not return to law practice without further review by partners was not extremely outrageous and did not generate genuine issue of material fact); *Engstrom,* 461 N.W.2d at 320 (negligent failure to search for plaintiffs' adopted daughter's natural father before placing her in plaintiffs' home, and telling adoptive parents father was dead without verifying his death, not outrageous); *Kirk v. Farm & City Ins. Co.,* 457 N.W.2d 906, 911 (Iowa 1990) (insurance company's refusal to pay full amount of uninsured coverage not outrageous); *Mills,* 454 N.W.2d at 849 (rural electric cooperative's conduct in using split bolt connectors instead of compression connectors to connect grounding jumper wire to main neutral line, in failing to discover dangerous situation that such omission presented, and in conducting settlement negotiations through insurance carrier with cooperative customers who sustained fire damage not sufficiently outrageous)). More recent decisions of the Iowa Supreme Court do not shed any further light on what type of conduct will be deemed sufficiently outrageous. *See,*

*e.g.*, *Fuller*, 567 N.W.2d at 422-23 (holding that mere report to police of possible criminal activity was not outrageous); *Van Baale*, 550 N.W.2d at 156 (firing police officer after assuring him he would not be fired if he pleaded guilty to charges was not sufficiently outrageous); *Taggart*, 549 N.W.2d at 802 (Dean's yelling sexist and condescending comments at professor and accusing her of causing trouble, and otherwise verbally berating her, even if threatening, did not constitute outrageous conduct); *Dickerson*, 547 N.W.2d at 214 (issuing two citations for violation of hunting laws of which defendant was acquitted, confiscating and refusing to return invalid hunting license, repeated and rude checks of plaintiff's hunting license, and refusal to allow plaintiff to keep a road-killed deer were not sufficiently outrageous); *Marks*, 528 N.W.2d at 546-47 (allegedly defamatory comments, writings, and statements leading to loss of church membership not sufficiently outrageous to sustain the tort). Nevertheless, at the motion to dismiss stage, the issue before the court is whether the claim of intentional infliction of emotional distress has been sufficiently pled. Examining the facts alleged by Burns in his Amended Complaint, when considered as a whole and in the light most favorable to Burns, the court finds Burns's allegations of outrageousness are sufficient to survive a motion to dismiss. Specifically, Burns alleges, *inter alia*, that in the course of the conspiracy, Robin and Dori sent an email communication to over 300 households in which Burns was falsely accused of being physically abusive to Robin. Following the dissemination of this email, the Moving Defendants, in furtherance of the conspiracy, prepared, executed and signed under oath affidavits in which they attested to facts which were either knowingly false or facts which they had no knowledge for the purpose of assisting Robin in wrongfully denying Burns custody of HRBM, severely limiting his visitation with HRBM, and/or driving Burns from town. Moreover, a report to the Iowa Department of Human Services and Child Protective Services was made by or at the direction of Robin or Waagmeester, in

which Burns was falsely accused of sexually molesting HRBM.  In addition, it is alleged that, again in furtherance of the conspiracy, the windshield of Burns's automobile was smashed and its tires flattened.  The court believes that the facts alleged in the Amended Complaint if presented to an average member of the community would arouse such resentment against the Moving Defendants and the other conspirators, and lead that citizen to exclaim, "Outrageous!"  *Northrup,* 372 N.W.2d at 198.  The court finds the alleged conduct of the conspirators so shocking as to be "outrageous," such that their conduct can only be regarded as atrocious, and utterly intolerable in a civilized community.  *Id.*  Thus, the court finds the allegations contained in the Amended Complaint are sufficient to support a claim of intentional infliction of emotional distress.  Accordingly, this segment of the Moving Defendants' motion to dismiss is also denied.

### d.    *Invasion of privacy*

The court next turns its attention to Burns's claim for invasion of privacy.  The Iowa Supreme Court first recognized the tort of invasion of privacy in *Bremmer v. Journal Tribune Publ'g Co.*, 247 Iowa 817, 76 N.W.2d 762 (1956).  *See Stessman v. American Black Hawk Broad. Co.*, 416 N.W.2d 685, 686 (Iowa 1987);  *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 291 (Iowa 1979), *cert. denied*, 445 U.S. 904 (1980); *Winegard v. Larsen*, 260 N.W.2d 816, 822 (Iowa 1977).  Since the recognition of the tort in *Bremmer*, the Iowa Supreme Court has adopted and applied the principles of invasion of privacy articulated in the Restatement (Second) of Torts.  *See Kiesau v. Bantz*, 686 N.W.2d 164, 179 (Iowa 2004); *Stessman*, 416 N.W.2d at 686; *Lamberto v. Bown*, 326 N.W.2d 305, 309 (Iowa 1982); *Anderson v. Low Rent Housing Comm'n of Muscatine*, 304 N.W.2d 239, 248 (Iowa), *cert. denied*, 454 U.S. 1086 (1981); *Howard*, 283 N.W.2d at 291; *Winegard*, 260 N.W.2d at 822; *see also Hill v. McKinley*, 311 F3d 899, 905-06 (8th Cir. 2002).   The Restatement principles the Iowa Supreme

Court has adopted are found in § 652A and subsequent sections defining each form of the tort. Section 652A states as follows:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2) The right of privacy is invaded by
>
> (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or
>
> (b) appropriation of the other's name, or likeness, as stated in § 652C; or
>
> (c) unreasonable publicity given to the other's private life, as stated in § 652D; or
>
> (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

RESTATEMENT (SECOND) OF TORTS § 652A.

The sole form of the tort in question here, false light, has been recognized by the Iowa Supreme Court, which has approved the elements for this cause of action as set out in the Restatement (Second) of Torts § 652E. *Kiesau*, 686 N.W.2d at 179; *Willson v. City of Des Moines,* 386 N.W.2d 76, 83 n.8 (Iowa), *cert. denied,* 479 U.S. 948 (1986). Under Iowa law, an invasion of privacy claim involving placing a person in false light occurs when

> "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Kiesau*, 686 N.W.2d at 179 (quoting *Winegard*, 260 N.W.2d at 823); *see Willson*, 386 N.W.2d at 83 n.8 ("A claim for false light invasion of privacy is based upon an untruthful publication which places a person before the public in a manner that would be highly

offensive to a reasonable person."). Specifically, the Restatement defines the tort of false light as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

RESTATEMENT (SECOND) OF TORTS § 652A. Although this tort "overlaps the law of defamation," *Winegard v. Larsen,* 260 N.W.2d 816, 823 (Iowa 1977), and requires proof of "untruthfulness," it is not necessary for the plaintiff to prove that he or she was defamed. *Anderson v. Low Rent Housing Comm'n of Muscatine,* 304 N.W.2d 239, 248 (Iowa), *cert. denied,* 454 U.S. 1086 (1981).

The Moving Defendants contend that this claim must be dismissed because Burns has failed to plead "publication" to a third party. The "publicity" requirement of a false light tort is explained in Restatement (Second) of Torts § 652D comment a. Specifically, comment a provides in pertinent part as follows:

> *a. Publicity.* The form of the invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. . . . "Publicity" . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of communication that reaches or is

sure to reach, the public.

> Thus it is not an invasion of the right of privacy, within the
> rule stated in this Section, to communicate a fact concerning
> the plaintiff's private life to a single person or even to a small
> group of persons..

RESTATEMENT (SECOND) OF TORTS § 652D comment a. The element of "publicity" in a false light claim therefore differs from the element of "publication" in other defamation claims. The latter means any communication by the defendant to a third party; the former concerns communications made to the public at large. *See Brown v. O'Bannon,* 84 F. Supp. 2d 1176, 1180-81 (D. Colo. 2000); *Chisolm v. Foothill Capital Corp.*, 940 F. Supp.1273, 1285 (N.D. Ill. 1996); *Ali v. Douglas Cable Communications,* 929 F. Supp. 1362, 1383 (D. Kan. 1996).

As indicated previously, it is alleged that Robin and Dori, acting in furtherance of the conspiracy, sent an email communication to over 300 households in which Burns was accused of being physically abusive to Robin. Although no Iowa cases have delineated what conduct is sufficient to meet the "publicity" requirement of an invasion of privacy claim, the court finds this alleged disclosure is sufficiently broad, at the motion to dismiss stage of the case, to satisfy the publicity element of Burns's claim of false light invasion of privacy. Accordingly, this portion of the Moving Defendants' motion to dismiss is also denied.

### 3. *Absolute privilege*

Finally, the court must consider the Moving Defendants' assertion that their statements about Burns are absolutely privileged under Iowa law. The Moving Defendants argue that the comments made by them in their affidavits are absolutely privileged because they were made as part of a judicial proceeding. Burns counters that the actions of the conspiracy are broader than the mere submission of affidavits in a judicial proceeding and

that immunity is inappropriate here because he has alleged tortious behavior that occurred outside the scope of judicial proceedings.

Although it does not appear that Iowa courts have spoken on this question, there is authority for the Moving Defendants' claim of privilege. *See* RESTATEMENT (SECOND) OF TORTS § 588 (witness absolutely privileged to publish defamatory matter "in communications preliminary to a proposed judicial proceeding"); *see also Ingber v. Mallilo*, 860 N.Y.S.2d 180, 181 (N.Y. App. Div. 2008) (noting that statements made by "witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, as long as they are material and pertinent to the issue to be resolved in the proceeding ."); *Offen v. Brenner*, 935 A.2d 719, 724 (Md. 2007) (recognizing that Maryland law provided "absolute privilege for statements made by a witness in the course of judicial proceedings."); *McKinney v. Chapman*, 929 A.2d 355, 359 (Conn. App. Ct. 2007) (noting that in Connecticut the doctrine of absolute privilege protects otherwise defamatory statements made in the context of judicial or quasi-judicial proceedings, extends to witnesses); *Fisher v. Lint*, 868 N.E.2d 161, 167 (Mass. App. Ct. 2007) (noting that under Massachusetts law statements made by witness "in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith."); *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, (Minnesota 2007) (observing that under Minnesota law, [s]tatements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation."); *Fullerton v. Florida Med. Ass'n, Inc.*, 938 So.2d 587, 592 (Fla. Dist. Ct. App. 2006) (noting that "'defamatory statements made in the course of judicial proceedings

by parties, witnesses and counsel are absolutely privileged, no matter how false or malicious those statements might be, provided the statements are relevant to the subject of the inquiry.'") (quoting *Fariello v. Gavin*, 873 So.2d 1243, 1245 (Fla. Dist. Ct. App. 2004)); *Oesterle v. Wallace*, 725 N.W.2d 470, 474 (Mich. Ct. App. 2006) ("Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried."); *Montemayor v. Ortiz*, 208 S.W.3d 627, 652 (Tex. App. 2006) ("Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case.") (citation omitted); *Smith v. Hodges*, 199 S.W.3d 185, 194 (Ky. Ct. App. 2005) (holding that statements made by witness in deposition were subject to the "judicial proceedings privilege."); *State ex rel. Oklahoma Bar Ass'n v. Dobbs*, 94 P.3d 31, 45 (Okla. 2004) ("Oklahoma has long recognized that attorneys, parties and witnesses are immune from *defamation and certain other suits* where those suits are based upon communications made *during or preliminary to judicial proceedings* as long as the communication is in some way relevant to the proceeding.") (emphasis original); *Wright v. Truman Road Enters., Inc.*, 443 S.W.2d 13, 15 (Mo. Ct. App. 1969) (adopting a rule of absolute privilege for witnesses testifying in a judicial proceeding).

In light of these authorities, it seems likely the Iowa Supreme Court, if faced with the issue, would adopt the Restatement principle. *See Kennedy v. Zimmermann*, 601 N.W.2d 61, 64 (Iowa 1999) (following Restatement in related context). There can be little doubt, as Burns himself concedes, that insofar as he alleges the Moving Defendants made

false accusations within the dissolution action, the Moving Defendants' statements are privileged and cannot form the basis for a civil cause of action. But Burns is correct in his assertion that his complaint alleges more than the Moving Defendants statements made within the dissolution action; he also alleges that the Moving Defendants willingly joined a conspiracy, one object of which was to intentionally harm Burns's reputation and good standing in the community. In discussing the absolute privilege accorded lawyers concerning communications made in connection with a judicial proceeding, the Iowa Supreme Court has observed:

> Although the privilege is an absolute bar to liability, its scope is limited to communications made in connection with a judicial proceeding. Restatement (Second) of Torts § 586. Statements made during an occasion outside a judicial proceeding are not covered. The rationale for limiting the absolute privilege to judicial proceedings is derived from the same balancing of interests that supports the existence of the privilege. While the paramount reason for granting lawyers a privilege in judicial proceedings is found in the need to protect zealous advocacy, we also recognize there are mechanisms within a judicial proceeding which serve to minimize any intrusion on the interest in a person's reputation which the privilege may create. Thus, while advocacy is preserved, the interest in a person's reputation is not forgotten. In *Mills v. Denny,* 245 Iowa 584, 63 N.W.2d 222 (1954), we said:
>
>> Absolute immunity, it seems, should be confined to cases where there is supervision and control by other authorities, such as courts of justice, where proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and punish as well as expunge from records statements of those who exceed proper bounds, and who may themselves be disciplined when necessary.

> *Mills,* 245 Iowa at 588, 63 N.W.2d at 225. When the occasion
> giving rise to a communication by a lawyer is not connected to
> a judicial proceeding, the need for unbridled advocacy is
> diminished, and the need to protect the intrusion upon a
> person's reputation is enhanced. Thus, communications by
> attorneys during occasions beyond a judicial proceeding are
> outside the protection of the absolute privilege.

*Kennedy v. Zimmermann*, 601 N.W.2d 61, 64 (Iowa 1999). Here, the privilege for statements made in a judicial proceeding would not apply to co-conspirator statements made outside of the judicial proceedings such as the email communications sent to the over 300 households in which Burns was accused of being physically abusive to Robin. Accordingly, the court concludes that the judicial proceedings privilege does not bar Burns's causes of action against the Moving Defendants. Therefore, this portion of the Moving Defendants' motion to dismiss is also denied.

## III. CONCLUSION

For the reasons discussed above, defendants Denise Harrison, Robert Van Es, Rhonda Van Es, Gerald Van Es, and Kim Van Es's motion to dismiss is **denied** in its entirety.

**IT IS SO ORDERED.**

**DATED** this 19th day of January, 2010.

Mark W. Bennett

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA