# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BURNS F. MCFARLAND,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBIN MCFARLAND, et al.,<br><br>    Defendants. | No. C08-4047-MWB<br>No. C09-4047-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT WAAGMEESTER'S MOTION TO DISMISS** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A. Standards For A Motion To Dismiss* . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Absolute Judicial Proceeding Privilege* . . . . . . . . . . . . . . . . . . . . 9

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     This case is the reverberation of the ongoing, contentious marital dissolution proceeding between plaintiff Burns F. McFarland ("Burns") and his wife, defendant Robin McFarland, a.k.a. Robin Van Es ("Robin"). Named as a defendant in this case, Randy

Waagmeester ("Waagmeester"), an attorney representing Robin in her divorce case, seeks the dismissal of all claims against him, pursuant to Federal Rule of Civil Procedure 12(b), for failure to state a claim.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On June 11, 2008, Burns filed his *pro se* Complaint in case no. C08-4047-MWB, against Robin, Dori Groenendyk ("Groenendyk"), and Robin's School of Dance & Tumbling. In that lawsuit, Burns alleges that Robin falsely accused him of domestic abuse in connection with their divorce proceedings and that Groenendyk and Robin's School of Dance & Tumbling conspired with Robin to slander, libel and defame Burns. Burns also alleges that defendants tortuously interfered with Burns's prospective business relations. On June 5, 2009, Burns filed his *pro se* Complaint in Case no. C09-4047-MWB, against some 60 defendants, including Robin, Groenendyk, Robin's School of Dance & Tumbling, and Randy Waagmeester. This second lawsuit also alleges actions taken by defendants in connection with the McFarlands' divorce. Specifically, Burns alleges that defendants conspired to slander, libel and defame him; to tortiously interfere with his business relationships; and to commit fraud and fraud in the inducement. On July 1, 2009, Case no. 08-4047-MWB was consolidated, pursuant to Federal Rule of Civil Procedure 42(a)(2), with Case no. C09-4047-MWB, because both cases involve common questions of law and fact. On August 27, 2009, Burns filed an Amended Complaint.[1] In his Amended Complaint, Burns alleges the following claims: civil conspiracy (Count I); intentional infliction of emotional distress (Count II); invasion of privacy-false light (Count III);

---

[1] The Amended Complaint names 42 defendants.

defamation-libel (Count IV); defamation-slander (Count V); tortious interference with business relations (Count VI); negligent infliction of emotional distress (Count VII); and, fraud and/or fraud in the inducement (Count VIII). In addition, Burns requests that punitive damages be assessed against defendants and that he be awarded his attorney fees and costs.

On September 21, 2009, defendant Waagmeester filed a motion to dismiss all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket no. 103).[2] In his motion, Waagmeester alleges that Burns's Amended Complaint fails to state a claim for which relief can be granted. Specifically, Waagmeester contends he is entitled to absolute immunity on account of his role as Robin's legal counsel in her divorce proceeding because the Amended Complaint fails to allege any conduct performed by him outside the scope of that conduct. Burns has filed a timely response in which he asserts that he has adequately pleaded factual allegations supporting his conspiracy claim and, as a result, Waagmeester is liable for the foreseeable conduct of each of his co-conspirators. Burns also argues that Waagmeester is not entitled to absolute immunity because he acted to intentionally harm him while acting outside the scope of his role as Robin's divorce attorney. Waagmeester, in turn, has filed a timely reply brief.

### B. *Factual Background*

On a motion to dismiss, the court must assume all facts alleged in Burns's Amended Complaint are true, and must liberally construe those allegations. *Conley v.*

---

[2] Plaintiff Burns has voluntarily dismissed his tortious interference with business interest claim and defendant Waagmeester is not named as a defendant in either the negligent infliction of emotional distress, or fraud and/or fraud in the inducement claims.

*Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, the following factual background is drawn from Burns's Amended Complaint in such a manner.

Burns is a resident of Mississippi. All named defendants are residents of Iowa, with Waagmeester being a resident of Rock Rapids, Iowa. Burns and Robin were married on June 11, 2004. They have one son, HRBM. Burns is a licensed attorney and his business involves providing legal and regulatory advice to hospitals and hospital systems. Burns is also the author of multiple Christian books.

On June 4, 2007, Robin filed for divorce. Burns and Robin's divorce case is pending. As part of the divorce proceedings, both Burns and Robin are seeking custody of HRBM. Robin sought to deny Burns custody of HRBM, and/or to severely limit Burns's visitation rights with HRBM. She also sought to run Burns "out of town." Robin instituted a conspiracy to achieve her goals of depriving Burns of custody and visitation with HRBM, and driving Burns to leave town. The conspiracy began in June 2007. The conspiratorial plan called for people to make false and disparaging statements about Burns and to prepare and execute sworn affidavits that contained false statements about Burns or statements that were made about Burns with reckless disregard for their truth or accuracy. Another goal of the conspiracy was to destroy Burns's reputation in the community, including those with whom he was seeking to develop business relationships. Defendants agreed to accuse Burns of acts of physical, mental and emotional abuse. To that end, defendants made statements in which they accused Burns of committing acts of mental and physical abuse on Robin and HRBM, stealing money from Robin, and committing the crime of domestic abuse.

The allegations regarding domestic abuse were incorporated in a "petition for relief from domestic abuse" that was filed in Iowa District Court for Sioux County as part of

4

Burns and Robin's divorce case.[3] Robin, Groenendyke and others disseminated the accusations contained in the petition for relief from domestic abuse orally and in writing throughout the city of Sioux Center, Iowa. Robin filed the petition for relief from domestic abuse even though Burns had never assaulted her or committed any act of physical violence toward her.

Robin and Waagmeester solicited two court appointed "experts" who were to provide reports and affidavits concerning the fitness of Burns as a parent and his visitation with HRBM. Waagmeester "sometimes instruct[ed] them to ignore evidence that was favorable to [Burns] and refuse to speak with [Burns] before rendering their opinion." Amended Compl. at ¶ 64.

In June 2007, Robin and Groenendyk sent out an email addressed to the parents of the children who attended Robin's School of Dance & Tumbling, Robin's business. The email was sent out to over 300 households using equipment from Robin's School of Dance & Tumbling and on that business's email account. The email contained false allegations that Burns was an abusive husband and that he had forced Robin to leave her home temporarily in order to "get away from" Burns's abuse. It stated that Robin "needs many affidavits from friends" and directed that "forms are available for pick up at Dori's house . . . Please return all affidavits to Dori's house by Friday morning." Amended Compl. at ¶ 9. As part of the conspiracy, defendants prepared, executed and signed under oath affidavits beginning on June 7, 2007, and continuing through August 2007, in which they attested to facts which were either knowingly false or facts which the affiant had no knowledge. Defendants knowingly and voluntarily prepared their affidavits for the

---

[3]Although the parties are in agreement that defendant Waagmeester is Robin's attorney in her dissolution proceeding with Burns, no such allegation of fact is contained in the Amended Complaint.

purpose of assisting Robin in denying Burns custody of HRBM, severely limiting his visitation with HRBM, and/or driving Burns from town.  Robin, Groenendyke, and other defendants repeated false allegations about Burns during their conversations with other individuals and solicited others to prepare false affidavits for Robin.

On July 27, 2007, in furtherance of the conspiracy, a false report was made to the Iowa Department of Human Services and Child Protective Services by or at the direction of Robin, Waagmeester and others in which Robin accused Burns of sexually molesting HRBM.  Later, a second false report was made to the Iowa Department of Human Services and Child Protective Services.[4]  Other actions taken in furtherance of the conspiracy included smashing the windshield of Burns's automobile, and flattening its tires, continuous harassment of Burns in public, defendants' forbidding their children from playing with HRBM, and spreading rumors that Burns is not a Christian and that he was an abuser, an adulterer, a thief and a criminal.  Robin told a well-respected member of the community that Burns is not a Christian and had been engaged in an extramarital affair during his marriage to Robin.  Neither of Robin's accusations are true.

## II. LEGAL ANALYSIS

Waagmeester seeks dismissal of all claims asserted against him for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]  After reviewing the

---

[4] The Amended Complaint does not state who filed the second report.

[5] The parties do not argue that anything other than Iowa law should apply, and both Burns and Waagmeester utilize Iowa statutory law in their briefs. In the absence of a dispute between the parties, the court assumes Iowa law applies and, furthermore, notes that Iowa has the most significant relationship to this case because all of the events giving rise to this litigation occurred in Iowa.

standards for a 12(b)(6) motion to dismiss, the court will address the specific issues raised by Waagmeester's motion *seriatim*.

### A. Standards For A Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[6] In its decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts

---

[6]Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, this amendment did not change the standards for a Rule 12(b)(6) motion.

> "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

### *B. Absolute Judicial Proceeding Privilege*

Defendant Waagmeester seeks dismissal of the claims against him on the ground that he is absolutely immune for his conduct in performing as Robin's attorney in her divorce case. Burns brings his claims against Waagmeester under Iowa common law. When state law creates a cause of action, state law also determines whether there is a defense of immunity, unless the state rule is in conflict with federal law. *See Ferri v. Ackerman,* 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."); *see* also *Davidson v. Cannon,* 474 U.S. 344, 359 (1986) ("A State can define defenses, including immunities, to state-law causes of action, as long as the state rule does not conflict with federal law."); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982) ("Of course, the State remains free to create substantive defenses or immunities for use in adjudication--or to eliminate its statutorily

9

created causes of action altogether--just as it can amend or terminate its welfare programs."); *Vega-Mena v. United States*, 990 F.2d 684, 691 (1st Cir. 1993) (quoting *Ferri*, 444 U.S. at 198); *Brown v. City of Clewiston*, 848 F.2d 1534, 1542 n.17 (11th Cir. 1988) (same); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) ("The Constitution does not create a fundamental right to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational."). In this diversity case, then, the court will ascertain and apply Iowa law in an effort to reach the same result that Iowa courts would reach.

As discussed above, Waagmeester argues that the actions taken by him are absolutely privileged because they were made as part of a judicial proceeding. Burns counters that the actions of the conspiracy are broader than the mere submission of affidavits in a judicial proceeding and that immunity is inappropriate here because he has alleged tortious behavior that occurred outside the scope of judicial proceedings.

Iowa recognizes an absolute privilege from liability for actions which take place in a judicial proceeding. *Kennedy v. Zimmermann*, 601 N.W.2d 61, 64 (Iowa 1999); *Spencer v. Spencer,* 479 N.W.2d 293, 295 (Iowa 1991); *Robinson v. Home Fire & Marine Ins. Co.,* 49 N.W.2d 521, 524-27 (1951). The Iowa Supreme Court has recognized that the parameters of this privilege are as follows:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

*Kennedy*, 601 N.W.2d at 64 (quoting RESTATEMENT (SECOND) OF TORTS § 586 (1977)). "The rule employs a two-part analysis." *Id.* An attorney is absolutely privileged to publish false and defamatory statements in judicial proceedings if (1) the statements are made preliminary to, or in the institution of, or during the course and as a part of a judicial proceeding, and (2) the content of the statement is reasonably pertinent or has some relation to the judicial proceeding. *Spencer,* 479 N.W.2d at 295 (citing RESTATEMENT (SECOND) OF TORTS §§ 586-88, at 247-51 (1977)); *accord Kennedy*, 601 N.W.2d at 64. "The purpose of the absolute privilege is to encourage the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings." *Spencer,* 479 N.W.2d at 295; *accord Kennedy*, 601 N.W.2d at 64 ("The judicial proceedings privilege is based upon a public policy of giving attorneys, as officers of the court, the utmost freedom in their efforts to secure justice for their clients."); *see Beeck v. Kapalis,* 302 N.W.2d 90, 97 (Iowa 1981).

In discussing the absolute privilege accorded lawyers concerning communications made in connection with a judicial proceeding, the Iowa Supreme Court has observed:

> The privilege is absolute, and protects attorneys from liability in an action for defamation regardless of their purpose in publishing the defamatory matter, their belief in its truth, or even their belief in its falsity. *Id.* "[T]he ends to be gained by permitting such statements-zealous advocacy-outweigh the harm which may be done to the reputation of some persons in the course of judicial proceedings." *Tallman v. Hanssen,* 427 N.W.2d 868, 870 (Iowa 1988).
>
> Although the privilege is an absolute bar to liability, its scope is limited to communications made in connection with a judicial proceeding. Restatement (Second) of Torts § 586. Statements made during an occasion outside a judicial proceeding are not covered. The rationale for limiting the

absolute privilege to judicial proceedings is derived from the same balancing of interests that supports the existence of the privilege. While the paramount reason for granting lawyers a privilege in judicial proceedings is found in the need to protect zealous advocacy, we also recognize there are mechanisms within a judicial proceeding which serve to minimize any intrusion on the interest in a person's reputation which the privilege may create. Thus, while advocacy is preserved, the interest in a person's reputation is not forgotten. In *Mills v. Denny,* 245 Iowa 584, 63 N.W.2d 222 (1954), we said:

> Absolute immunity, it seems, should be confined to cases where there is supervision and control by other authorities, such as courts of justice, where proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and punish as well as expunge from records statements of those who exceed proper bounds, and who may themselves be disciplined when necessary.

*Mills,* 245 Iowa at 588, 63 N.W.2d at 225. When the occasion giving rise to a communication by a lawyer is not connected to a judicial proceeding, the need for unbridled advocacy is diminished, and the need to protect the intrusion upon a person's reputation is enhanced. Thus, communications by attorneys during occasions beyond a judicial proceeding are outside the protection of the absolute privilege.

*Kennedy*, 601 N.W.2d at 64.

Here, several, if not all, of the principles underlying the privilege are implicated. First, Waagmeester was zealously advocating for his client, Robin, at the time all of his actions alleged in the Amended Complaint occurred. Second, Waagmeester secured and/or filed the challenged affidavits and reports in furtherance of his representation of his client, Robin. The Iowa Supreme Court has specifically instructed that "pleadings and affidavits filed with the court are protected by the privilege, as are briefs." *Id.* at 65. Moreover,

declining to extend the privilege to Waagmeester would have the effect of inhibiting attorneys in his position from fully and completely representing their client's interests before the courts. Accordingly, the court concludes that the judicial proceeding privilege applies to all of Waagmeester's alleged conduct in this case.

While Burns contends that Waagmeester, while representing Robin in her divorce case and acting in concert with the other defendants, conspired against him, such allegations of a conspiracy with others will not defeat absolute immunity or privilege. *See Moses v. Parwatikar,* 813 F.2d 891, 893 (8th Cir. 1987) (holding that court appointed psychiatrist accused of conspiracy absolutely immune from suit), *cert. denied*, 108 S. Ct. 108 (1987); *see also Spurlock v. Satterfield*, 167 F.3d 995, (6th Cir. 1999) (holding that allegation of conspiracy to render false testimony did not waive witness's absolute testimonial immunity); *Wilkins v. May,* 872 F.2d 190, 192 (7th Cir. 1989) (holding that plaintiff's attempt to circumvent witnesses' absolute immunity by charging them with conspiracy is facile and must fail), *cert. denied sub nom. Wilkins v. McDaniel*, 110 S. Ct. 733 (1990); *Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir. 1985) (holding that allegations that judge conspired to deprive defendant of constitutional rights did not abrogate judge of absolute immunity). In discussing the related context of quasi-judicial immunity, the Eighth Circuit Court of Appeals provided the following succinct explanation of the logic underscoring this rule:

> Exceptions to absolute immunity should not be created freely. That malicious or corrupt acts are protected, *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1217, 18 L. Ed. 2d 288 (1967), indicates how solidly the doctrine of absolute immunity is entrenched in our legal system. To defeat this doctrine by pleading a conspiracy would be to create an exception where none was intended. Clearly a judge who conspires to violate a person's constitutional rights acts maliciously or corruptly. However, the need to preserve the judge's independence

> requires a grant of absolute immunity. The same policy
> requires us to hold a court appointed psychiatrist immune.

*Moses*, 813 F.2d at 893. Accordingly, consistent with these authorities, the court concludes that Waagmeester's actions, taken in conjunction with Robin's divorce proceedings, are absolutely privileged and, therefore, cannot support the claims against him in this lawsuit, and his Motion to Dismiss is granted.

### *III. CONCLUSION*

For the reasons discussed above, defendant Waagmeester's Motion to Dismiss is **granted** in its entirety.

**IT IS SO ORDERED.**

**DATED** this 25th day of February, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA