**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| BURNS F. MCFARLAND,<br><br>Plaintiff,<br><br>vs.<br><br>ROBIN MCFARLAND, et al.,<br><br>Defendants. | No. C08-4047-MWB<br>No. C09-4047-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT STACEY HOFER-AHRENSTORFF'S MOTION FOR SUMMARY JUDGMENT** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . 4
   *B. Absolute Privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *C. Analysis of Statement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     At issue in this motion for summary judgment is whether an expert, who offered her opinion regarding the need for structured, supervised child visitation as part of a divorce proceeding, enjoys an absolute privilege for those statements made in the course of the dissolution litigation.

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

The summary judgment record reveals the following undisputed facts. Plaintiff Burns H. McFarland ("Burns") is a resident of Mississippi. Defendants Stacey Hofer-Ahrenstorff ("Hofer-Ahrenstorff") and Robin McFarland a.k.a. Robin Van Es ("Robin") are residents of Iowa. Burns and Robin were married on June 11, 2004. They have one son, HRBM. On June 4, 2007, Robin filed for divorce in the Iowa District Court for Sioux County.

Hofer-Ahrenstorff is a mental health counselor, with a master's degree in social work, in private practice and licensed by the State of Iowa. She has over fifteen years of experience in victim service and mental health therapy. Hofer-Ahrenstorff provided mental health therapy to Robin. She also provided Robin expert testimony in her dissolution case. As an expert, Hofer-Ahrenstorff submitted an affidavit, on Robin's behalf, to the Iowa District Court. In her affidavit, Hofer-Ahrenstorff avers the Burns's conduct with HRBM has been inappropriate and detrimental to HRBM, and, as a result, recommends that the court set a detailed schedule of limited supervised visitation for Burns until trial can be held on the McFarland's divorce. Hofer-Ahrenstorff has not provided or shared her affidavit with anyone but Burns and Robin, their divorce lawyers, professionals involved in the dissolution case, or the judge handling their divorce case.

### B. Procedural Background

On June 11, 2008, Burns filed his *pro se* Complaint in case no. C08-4047-MWB, against defendants Robin McFarland, Dori Groenendyk, and Robin's School of Dance & Tumbling. In that lawsuit, Burns alleges that Robin falsely accused him of domestic abuse

in connection with their divorce proceedings and that Groenendyk and Robin's School of Dance & Tumbling conspired with Robin to slander, libel and defame Burns. Burns also alleges that defendants tortuously interfered with Burns's prospective business relations. On June 5, 2009, Burns filed his *pro se* Complaint in case no. C09-4047-MWB, against defendants, including Hofer-Ahrenstorff, Robin, Groenendyk, and Robin's School of Dance & Tumbling.[1] This second lawsuit also alleges actions taken by defendants in connection with the McFarland divorce. Specifically, Burns alleges that defendants conspired to slander, libel and defame him, and to commit fraud and fraud in the inducement. On July 1, 2009, case no. C08-4047-MWB was consolidated, pursuant to Federal Rule of Civil Procedure 42(a)(2), with Case no. C09-4047-MWB, because both cases involve common questions of law and fact. On August 27, 2009, Burns filed an Amended Complaint against defendants, including Hofer-Ahrenstorff.[2] In his Amended Complaint, Burns sets out the following eight common law causes of action: (1) civil conspiracy (Count 1); (2) intentional infliction of emotional distress (Count 2); (3) invasion of privacy (Count 3); (4) libel (Count 4); (5) slander (Count 5); (6) tortious interference with business relations (Count 6); (7) negligent infliction of emotional distress (Count 7); and, (8) fraud and/or fraud in the inducement (Count 8). The Amended Complaint, however, only contains the following allegation regarding Hofer-Ahrenstorff's conduct:

> Defendant Stacy Hofer-Ahrenstorff on or about May 8, 2009, in furtherance and as part of the conspiracy alleged in the Complaint, knowingly and voluntarily published false reports under the guise of their [sic] professional role as an expert witness that were biased, one-sided and rendered in a

---

[1] The Complaint named 60 defendants.

[2] While the Complaint named 60 defendants, the Amended Complaint reduced the number of defendants to 45.

3

> manner that fell well below the standard of care governing their [sic] profession. This overt act was done specifically to further the objectives and aims of the conspiracy alleged in this Complaint. In particular, the true purpose of the report was to disparage and cause harm to Plaintiff. Defendant abandoned their [sic] duty of neutrality and objectivity, instead assuming the role as a participant in the conspiracy to achieve the conspiracy's purpose.

Amended Comp. at ¶ 65 (docket no. 90).

Defendant Hofer-Ahrenstorff has filed a Motion for Summary Judgment on all claims. In her motion, Hofer-Ahrenstorff asserts that the claims against her should be dismissed because they are based exclusively on statements she made in her affidavit submitted to the Iowa District Court regarding the need for structured, supervised child visitation as part of the McFarlands' divorce, statements for which she enjoys an absolute privilege. Burns filed a timely resistance to Hofer-Ahrenstorff's motion in which he argues that the court should decline to extend absolute testimonial immunity to Hofer-Ahrenstorff. Hofer-Ahrenstorff, in turn, has filed a timely reply brief in support of her motion.

## II. LEGAL ANALYSIS

### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing

that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). The court will apply these standards to Hofer-Ahrenstorff's Motion for Summary Judgment.

### B. *Absolute Privilege*

Defendant Hofer-Ahrenstorff seeks summary judgment on the ground that she enjoys an absolute privilege for the statements she made in her affidavit submitted to the Iowa District Court concerning appropriate visitation during the pendency of the McFarlands' divorce. Burns brings his claims against Hofer-Ahrenstorff under Iowa common law. When state law creates a cause of action, state law also determines whether there is a defense of immunity, unless the state rule is in conflict with federal law. *See Ferri v. Ackerman,* 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."); *see also Davidson v. Cannon,* 474 U.S. 344, 359 (1986) ("A State can define defenses, including immunities, to state-law causes of action, as long as the state rule does not conflict with federal law."); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982) ("Of course, the State

remains free to create substantive defenses or immunities for use in adjudication--or to eliminate its statutorily created causes of action altogether--just as it can amend or terminate its welfare programs."); *Vega-Mena v. United States*, 990 F.2d 684, 691 (1st Cir. 1993) (quoting *Ferri*, 444 U.S. at 198); *Brown v. City of Clewiston*, 848 F.2d 1534, 1542 n.17 (11th Cir. 1988) (same); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) ("The Constitution does not create a fundamental right to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational."). In this diversity case, then, the court will ascertain and apply Iowa law in an effort to reach the same result that Iowa courts would reach.

Iowa recognizes an absolute privilege from liability for communications which take place in a judicial proceeding. *Spencer v. Spencer,* 479 N.W.2d 293, 295 (Iowa 1991) ; *Robinson v. Home Fire & Marine Ins. Co.,* 49 N.W.2d 521, 524-27 (1951). "The purpose of the absolute privilege is to encourage the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings." *Spencer,* 479 N.W.2d at 295; RESTATEMENT (SECOND) OF TORTS § 588, cmt. a (1977) ("The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure not be hampered by fear of private suits for defamation.").[3] In recognizing this absolute privilege, the Iowa Supreme Court has cited

---

[3] The Seventh Circuit Court of Appeals has explained the purpose for applying this absolute privilege to witnesses:

> [T]he privilege is especially designed for the protection and encouragement of disinterested lay witnesses. Since they have
> (continued…)

7

with approval provisions of the Second Restatement of Torts, including § 588, which recognizes the application of an absolute privilege in the context of communications made as part of a judicial proceeding. *See Spencer,* 479 N.W.2d at 295 (citing RESTATEMENT (SECOND) OF TORTS §§ 586-88 (1977)); *see also Kennedy v. Zimmerman*, 601 N.W.2d 61, 64 (Iowa 1999) (applying the Second Restatement of Torts § 586 to determine whether attorney's statements were absolutely privileged); *Tallman v. Hanssen*, 427 N.W.2d 868, 869 (Iowa 1988) (noting that Iowa's rule concerning an absolute privilege for statements made as part of a judicial proceeding was derived from the Second Restatement of Torts § 586); *Robinson v. Home Fie & Marine Ins. Co.*, 49 N.W.2d 521, 525 (Iowa 1951) (looking to Restatement of Torts § 586 in ascertaining whether attorney's statements were absolutely privileged); *White & Johnson, P.C. v. Bayne*, 670 N.W.2d 430, 2003 WL 21696938, at *3 (Iowa Ct. App. July 23, 2003) (recognizing an attorney or party's

---

[3](…continued)
> no stake in the case and cannot be paid more than a nominal fee for testifying, they would be highly reluctant to testify if the threat of a defamation suit hung over their heads. It would be cruel to force them by testifying to assume that risk. Expert witnesses, in contrast, could be paid to assume the risk. Nevertheless they are not excepted from the privilege, and that is sensible. Litigation is costly enough without judges making it more so by throwing open the door to defamation suits against expert witnesses. That would not only tend to turn one case into two or more cases (depending on the number of expert witnesses), but also drive up expert witnesses' fees; expert witnesses would demand as part of their fee for testifying compensation for assuming the risk of being sued because of what they testified to.

*McGregor v. Rutberg*, 478 F.3d 790, 792 (7th Cir. 2007)(citations omitted).

absolute privilege under Iowa law and citing *Spencer's* reference to the Second Restatement of Torts §§ 586-88) (unpublished table decision).

Although the Iowa Supreme Court has not yet explicitly adopted an absolute privilege for witnesses testifying in a judicial proceeding, many other states have done so. *See Ingber v. Mallilo,* 52 A.D.3d 569, 860 N.Y.S.2d 180, 181 (2008) (noting that statements made by "witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, as long as they are material and pertinent to the issue to be resolved in the proceeding."); *Offen v. Brenner,* 402 Md. 191, 935 A.2d 719, 724 (2007) (recognizing that Maryland law provided an "absolute privilege for statements made by a witness in the course of judicial proceedings."); *McKinney v. Chapman,* 103 Conn. App. Ct. 446, 929 A.2d 355, 359 (2007) (noting that in Connecticut the doctrine of absolute privilege, which protects otherwise defamatory statements made in the context of judicial or quasi-judicial proceedings, extends to witnesses); *Fisher v. Lint,* 69 Mass. App. Ct. 360, 868 N.E.2d 161, 167 (2007) (noting that under Massachusetts law statements made by witness "in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith."); *Mahoney & Hagberg v. Newgard,* 729 N.W.2d 302, 306 (Minnesota 2007) (observing that under Minnesota law, "[s]tatements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation."); *Fullerton v. Florida Med. Ass'n, Inc.,* 938 So.2d 587, 592 (Fla. Dist. Ct. App. 2006) (noting that "'defamatory statements made in the course of judicial proceedings by parties, witnesses and counsel are absolutely privileged, no matter how false or

malicious those statements might be, provided the statements are relevant to the subject of the inquiry.'") (quoting *Fariello v. Gavin,* 873 So.2d 1243, 1245 (Fla. Dist. Ct. App. 2004)); *Oesterle v. Wallace,* 272 Mich. Ct. App. 260, 725 N.W.2d 470, 474 (2006) ("Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried."); *Montemayor v. Ortiz,* 208 S.W.3d 627, 652 (Tex. App. 2006) ("Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case.") (citation omitted); *Smith v. Hodges,* 199 S.W.3d 185, 193-94 (Ky. Ct. App. 2005) (holding that statements made by witness in deposition were subject to the "judicial proceedings privilege."); *State ex rel. Oklahoma Bar Ass'n v. Dobbs,* 94 P.3d 31, 45 (Okla. 2004) ("Oklahoma has long recognized that attorneys, parties and witnesses are immune from *defamation and certain other suits* where those suits are based upon communications made *during or preliminary to judicial proceedings* as long as the communication is in some way relevant to the proceeding.") (emphasis original); *Wright v. Truman Road Enters., Inc.,* 443 S.W.2d 13, 15 (Mo. Ct. App. 1969) (adopting a rule of absolute privilege for witnesses testifying in a judicial proceeding). Burns has not offered any contrary legal authority which would even suggest that the Iowa Supreme Court would not adopt an absolute privilege for witnesses testifying in a judicial proceeding.

This line of authorities, combined with the Iowa Supreme Court's explicit adoption of an absolute privilege for attorneys found in the Second Restatement of Torts § 586, and

its citation with approval to both the Second Restatement of Torts § 587, pertaining to parties' entitlement to an absolute privilege, and § 588, leads the court to conclude that if faced with the facts of this case, the Iowa Supreme Court would explicitly adopt an absolute privilege for witnesses testifying in a judicial proceeding found in the Second Restatement of Torts § 588.

### C. *Analysis of Statement*

Having concluded that Iowa would recognize the privilege, the question then is whether the privilege applies in this case to the statements contained in Hofer-Ahrenstorff's affidavit. Section 588 of the Second Restatement of Torts states in its entirety, "A witness in judicial proceedings is privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588 (1977).

Whether a communication by a witness satisfies the requirements of § 588 turns on a two-part analysis. First, the communication must have been made "preliminary to a proposed judicial proceeding, or during the course and as a part of a judicial proceeding." RESTATEMENT (SECOND) OF TORTS § 588; *see Smith*, 199 S.W.3d at 193 (applying two part test under § 588 of the Second Restatement of Torts to determine if witness's statement was absolutely privileged); *cf. Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 ((8th Cir. 1979) (applying almost identical two part test under § 586 of the Second Restatement of Torts to determine if attorney's communication was absolutely privileged); *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990) (applying near identical two part test under § 587 of the Second Restatement of Torts to determine if an absolute privilege applied to communications made by party). Second, it must be

determined that the communication "has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588; *see Smith*, 199 S.W.3d at 193-94; *cf. Asay*, 594 F.2d at 697; *General Elec. Co.*, 916 F.2d at 1127. The Iowa Supreme Court has defined a judicial proceeding as "'one carried on in a court of justice or recognized by law, wherein the rights of parties which are recognized and protected by law are involved and may be determined.'" *Kennedy*, 601 N.W.2d at 65 (quoting *Mills v. Denny*, 63 N.W.2d 222, 226 (Iowa 1954)).

Here, there is no dispute that Hofer-Ahrenstorff's statements were made as part of a judicial proceeding since the statements were contained in her affidavit submitted to the Iowa District Court handling the McFarlands' divorce case. Hofer-Ahrenstorff's statements also meet the second requirement, having some relation to the proceeding, because her affidavit was submitted to the court on the issue of appropriate child visitation during the pendency of the McFarlands' divorce. Accordingly, it is clear that Hofer-Ahrenstorff's statements contained in her affidavit are protected by an absolute privilege. Burns's defamation claim against Hofer-Ahrenstorff, therefore, fails as a matter of law. Because Burns's other claims against Hofer-Ahrenstorff are based exclusively on the statements contained in her affidavit, they fail for the same reason. *See MSK EyEs Ltd. v. Wells Fargo Bank*, 546 F.3d 533, (8th Cir. 2008) (holding under Minnesota law that an absolute privilege bars not only defamation claims but also claims sounding in defamation); *Pinto v. Internationale Set Inc.,* 650 F. Supp. 306, 309 (D. Minn. 1986) (holding that "plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defamation."); *In re Moore*, 186 B.R. 962, 977 (Bankr. N.D. Cal. 1995) (holding that absolute privilege "will defeat a tort action which, however labeled and whatever its theory of liability, is predicated upon publication of an injurious falsehood."); *Mahoney & Hagberg*, 729 N.W.2d at 310 (holding that witness's absolute privilege operates as a bar

to all claims arising out of purported defamatory statements regardless of claim's label). Accordingly, defendant Hofer-Ahrenstorff's Motion for Summary Judgment is granted.

### *III. CONCLUSION*

For the reasons stated above, defendant Hofer-Ahrenstorff's Motion for Summary Judgment is **granted**.

**IT IS SO ORDERED.**

**DATED** this 4th day of June, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA