# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BURNS F. MCFARLAND,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBIN MCFARLAND, et al.,<br><br>    Defendants. | No. C08-4047-MWB<br>No. C09-4047-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT DENISE HARRISON'S MOTION FOR SUMMARY JUDGMENT** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Rule 56(f) Continuance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *C. Absolute Privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *D. Analysis of Statement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     At issue in this motion for summary judgment is whether a bank official, who provided an affidavit as part of a divorce proceeding, in which she offered her opinion

regarding one divorce participant's loan history with the affiant's bank, observations of that person as a parent, and her impression of the public opinion of the other divorce participant, enjoys an absolute privilege for those statements made in the course of the dissolution litigation.

## I. INTRODUCTION AND BACKGROUND

### A. *Factual Background*

The summary judgment record reveals the following undisputed facts. Plaintiff Burns H. McFarland ("Burns") is a resident of Mississippi. Defendants Denise Harrison ("Harrison") and Robin McFarland a.k.a. Robin Van Es ("Robin") are residents of Iowa. Burns and Robin were married on June 11, 2004. They have one son, HRBM. On June 4, 2007, Robin filed for divorce in the Iowa District Court for Sioux County.

Harrison is the vice president and chief marketing officer for American State Bank in Sioux Center, Iowa. Harrison is also head of customer resolution at American State Bank. Harrison began working at American State Bank in 1982. Harrison is a work colleague of Robin's father, Robert Van Es ("Bob") at American State Bank. Although both Bob and Harrison work for American State Bank, Bob works in a separate building from Harrison.

Harrison worked as a loan officer at American State Bank for approximately twenty years, starting in 1987. Harrison's area of emphasis as a loan officer was in personal and residential loans. Harrison became personally acquainted with Robin approximately fourteen years ago when she assisted Robin with one of her dance recitals. Harrison became Robin's loan officer in the mid-1990's. Harrison assisted Robin in securing a residential loan in the mid-1990's. After which, Harrison assisted Robin in securing several other loans. Harrison knew from Robin's loan and payment history with American

State Bank that Robin paid off her past loans on time and usually prior to the loans' maturity dates. Harrison knew that Robin had no outstanding loan balances prior to her marrying Burns.

After Robin's marriage to Burns, Harrison learned that Robin has secured a new $175,000 loan from Primebank. Robin used her home as collateral for the Primebank loan. Harrison found Robin's switch to Primebank for her lending needs disconcerting and contacted Robin to ask why she had used Primebank instead of American State. Robin told Harrison that Burns did not want her using the same bank where her father, Bob, worked.

After Robin filed for divorce, the question of who should be held responsible for the Primebank loan became an issue of dispute. Robin asserted that most of the Primebank loan was used for Burns's business, HealthOne, and she should not be held responsible for paying it back. Burns disputed Robin's assertion regarding the Primebank loan, contending that Robin secured the loan for herself and that she should have to pay it back. Because of Harrison's knowledge of Robin's loan and payment history, Bob asked Harrison to prepare and provide an affidavit for Robin to be filed in her divorce case. At the time Bob asked Harrison to provide Robin with her affidavit, temporary custody, visitation, child support, and property distribution were at issue in the divorce case.

Harrison's affidavit was executed and notarized on August 13, 2007. Harrison prepared the contents of her affidavit on her own. Neither Bob nor Robin ever advised Harrison what to put in her affidavit. In her affidavit, Harrison addressed Robin's loan history at American State Bank, and Harrison's observations of Robin as a parent. In the last paragraph of her affidavit, Harrison discussed her impression of public opinion about Burns. This paragraph is based on reports Harrison received, as head of customer resolution, of an event that occurred at American State Bank involving Burns. Harrison

learned that Burns had stopped by American State Bank for something. However, since he was not a signatory on Robin's account, bank personnel refused to provide him with any information on her account. It was reported to Harrison that Burns became extremely belligerent with bank personnel when they refused to provide Burns with information on Robin's account. It was further reported to Harrison that after the incident Burns returned to the bank and apologized. Burns denies that he ever became belligerent with bank personnel.

Harrison never discussed the contents of her affidavit with Bob, either before or after she prepared it. After executing her affidavit and having it notarized, Harrison placed her affidavit in a sealed envelope and gave it to Bob for delivery to Robin's divorce attorney, Randy Waagmeester. Harrison never disseminated her affidavit to anyone other than Bob. Waagmeester mailed the affidavit to Burns's divorce attorney and the Iowa District Court on August 15, 2007. On August 16, 2007, Harrison's affidavit was filed in the Iowa District Court. Harrison never spoke to anyone about the contents of her affidavit before or after she prepared it. Harrison was subpoenaed to provide a videotaped trial deposition in Robin and Burns's dissolution case. Other than when being deposed, Harrison has not met with Waagmeester.

Trial in Robin and Burns's dissolution case began on November 4, 2009. The dissolution trial lasted ten days and was fully submitted to the Iowa District Court on February 28, 2010. On May 6, 2010, the Iowa District Court entered its decree of dissolution. The court specifically noted that it had not given any weight to any of the affidavits submitted by the parties and had based its decision on the testimony and other evidence presented in court.

### B. *Procedural Background*

On June 11, 2008, Burns filed his *pro se* Complaint in case no. C08-4047-MWB, against defendants Robin McFarland, Dori Groenendyk, and Robin's School of Dance & Tumbling. In that lawsuit, Burns alleges that Robin falsely accused him of domestic abuse in connection with their divorce proceedings and that Groenendyk and Robin's School of Dance & Tumbling conspired with Robin to slander, libel and defame Burns. Burns also alleges that defendants tortuously interfered with Burns's prospective business relations. On June 5, 2009, Burns filed his *pro se* Complaint in case no. C09-4047-MWB, against defendants, including Harrison, Robin, Groenendyk, and Robin's School of Dance & Tumbling.[1] This second lawsuit also alleges actions taken by defendants in connection with the McFarland divorce. Specifically, Burns alleges that defendants conspired to slander, libel and defame him, and to commit fraud and fraud in the inducement. On July 1, 2009, case no. C08-4047-MWB was consolidated, pursuant to Federal Rule of Civil Procedure 42(a)(2), with Case no. C09-4047-MWB, because both cases involve common questions of law and fact. On August 27, 2009, Burns filed an Amended Complaint against defendants, including Harrison.[2] In his Amended Complaint, Burns sets out the following eight common law causes of action: (1) civil conspiracy (Count 1); (2) intentional infliction of emotional distress (Count 2); (3) invasion of privacy (Count 3); (4) libel (Count 4); (5) slander (Count 5); (6) tortious interference with business relations (Count 6); (7) negligent infliction of emotional distress (Count 7); and, (8) fraud and/or

---

[1] The Complaint named 60 defendants.

[2] While the Complaint named 60 defendants, the Amended Complaint reduced the number of defendants to 45.

fraud in the inducement (Count 8). The Amended Complaint, however, contains only the following allegations regarding Harrison's conduct:

> Defendant Denise Harrison on or about August 13, 2007, in an affidavit executed under oath 1) knowingly made false and disparaging statements against Plaintiff; 2) made false statements against Plaintiff without factual basis; and/or 3) made false statements against Plaintiff with a reckless disregard for their truth and accuracy. Defendant knowingly and voluntarily prepared and executed this Affidavit for the purpose of assisting Defendant Robin McFarland in denying Plaintiff custody of his minor child, severely limiting Plaintiff's right of visitation, and/or running Plaintiff out of town—all as part of the conspiracy alleged in this Complaint. The affidavit prepared and executed was disseminated to others to be used in furtherance of the conspiracy.

Amended Comp. at ¶ 26 (docket no. 90).

Defendant Harrison has filed a Motion for Summary Judgment on all claims. In her motion, Harrison asserts that the claims against her should be dismissed because they are based exclusively on statements she made in her affidavit submitted to the Iowa District Court as part of the McFarlands' dissolution, statements for which she enjoys an absolute privilege. Alternatively, Harrison asserts that she is entitled to summary judgment on each of the claims against her on the merits. Burns filed a timely resistance to Harrison's motion in which he argues that her Motion for Summary Judgment is premature and that the court should therefore decline to rule on it until discovery is completed. Burns does not discuss whether Harrison is entitled to absolute testimonial immunity for the statements contained in her affidavit but does argue that she is not entitled to summary judgment on the merits of his claims against her. Harrison, in turn, has filed a timely reply brief in support of her motion in which she argues that Burns has failed to comply with the

requirements of Federal Rule of Civil Procedure 56(f) and, as a result, the court should proceed to consider her Motion for Summary Judgment at this time.

## II. LEGAL ANALYSIS
### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832

(8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). The court will apply these standards to Harrison's Motion for Summary Judgment.

## B. Rule 56(f) Continuance

Before addressing the merits of Harrison's Motion for Summary Judgment, the court must first address Burns's contention that the court's consideration of the motion is premature and should be delayed until he has completed his discovery in this case. Federal Rule of Civil Procedure 56(f) permits a party opposing summary judgment to request the court defer decision on a summary judgment motion until adequate discovery is completed. *See Ray v. American Airlines, Inc.*, ---F.3d---, 2010 WL 2630442, at *3 (8th Cir. July 2, 2010); *Roak v. City of Hazen*, 189 F.3d 758, 762 (8th Cir. 1999); *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997). Rule 56(f) provides

> **(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

FED. R. CIV. P. 56(f). The Eighth Circuit Court of Appeals recently explained that

> To obtain a Rule 56(f) continuance, the party opposing summary judgment must file an affidavit "affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."

*Ray*, ---F.3d---, 2010 WL 2630442, at *3 (quoting *Humphreys v. Roche Biomedical Lab., Inc.,* 990 F.2d 1078, 1081 (8th Cir. 1993)); *see Ballard v. Heineman*, 548 F.3d 1132, 1136-37 (8th Cir. 2008) ("Unless a party files an affidavit under Federal Rule of Civil

Procedure 56(f) showing what facts further discovery may uncover, 'a district court generally does not abuse its discretion in granting summary judgment on the basis of the record before it.'") (quoting *Nolan v. Thompson,* 521 F.3d 983, 986 (8th Cir. 2008)); *Roark v. City of Hazen, Ark.,* 189 F.3d 758, 762 (8th Cir. 1999) ("When seeking a continuance, however, the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover."); *Stanback v. Best Diversified Prods., Inc.,* 180 F.3d 903, 911 (8th Cir. 1999) ("Federal Rule of Civil Procedure 56(f) . . . requires the filing of an affidavit with the trial court showing 'what specific facts further discovery might unveil.'") (quoting *Dulany,* 132 F.3d at 1238).

Thus, the opposing party must "demonstrate how discovery will provide rebuttal to the movant's claims." *Alexander v. Pathfinder, Inc.,* 189 F.3d 735, 744 (8th Cir. 1999). Burns, as the party seeking a Rule 56(f) continuance, must do more than simply assert that he may discover additional facts, and must do more even than speculate about what those facts might be. Rather, as this court explained in *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 70 F. Supp. 2d 944 (N.D. Iowa 1999), "'[i]n moving for relief under Rule 56(f), a party must demonstrate specifically "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."'" *Dethmers Mfg. Co.,* 70 F. Supp. 2d at 981 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d 1138, 1144 (Fed. Cir. 1996), in turn quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.,* 520 F.2d 289, 297 (8th Cir. 1975), *cert. denied,* 424 U.S. 915 (1976)). To that end,

> [t]he party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Securities & Exchange Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980), *cert. denied,*

10

> 449 U.S. 1082, 101 S. Ct. 866, 66 L. Ed. 2d 806 (1981). The rule does not require clairvoyance on the part of the moving party, *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1292 (5th Cir.), *cert. denied,* 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994), but the movant is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1443 (5th Cir. 1993). It is not enough simply to assert, a la [the non-movant in the case], that "something will turn up."

*Simmons Oil Corp.,* 86 F.3d at 1144.

The reason underlying such requirements is that "it is well settled that ' Rule 56(f) does not condone a fishing expedition' where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct]." *Duffy v. Wolle,* 123 F.3d 1026, 1041 (8th Cir. 1997), *cert. denied,* 523 U.S. 1137 (1998). This is so, because "'Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" *Id.* (quoting *United States v. Light,* 766 F.2d 394, 397 (8th Cir. 1985)). Therefore, "'[a] party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Duffy*, 123 F.3d at 141 (again quoting *Light*, 766 F.2d at 397); *see Elnashar v. Speedway SuperAmerica, L.L.C.*, 484 F.3d 1046, 1054 (8th Cir. 2007); *Robinson v. Terex Corp*, 439 F.3d 465, 467 (8th Cir. 2006). Furthermore, the court does not abuse its discretion to deny discovery before ruling on a motion for summary judgment if the facts the party seeking a continuance believes it can obtain would not prevent the entry of summary judgment. *See Duffy*, 123 F.3d at 141;

*Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 797-98 (8th Cir. 1996). Where a party fails to carry its burden under Rule 56(f), "postponement of a ruling on a motion for summary judgment is unjustified." *Humphreys v. Roche Biomed. Labs., Inc.,* 990 F.2d 1078, 1081 (8th Cir. 1993); *see also Stanback,* 180 F.3d at 912 (quoting *Humphreys*, 990 F.2d at 1081).

Here, Burns has failed to file a motion under Rule 56(f) or even to present the court with an affidavit detailing the specific facts he expects to uncover through discovery and how those facts might help him defeat Harrison's Motion for Summary Judgment. Moreover, even if the court overlooked Burns's failure to provide an affidavit, his response to Harrison's Motion for Summary Judgment fails to provide the specific facts that discovery would reveal, and explain why those facts would preclude summary judgment. Indeed, Burns makes only the sort of "vague assertions that additional discovery will produce needed, but unspecified, facts" that are insufficient to require a continuance. *See Dethmers Mfg. Co.,* 70 F. Supp. 2d at 981 (quoting *Simmons Oil Corp.,* 86 F.3d at 1144) (internal quotation marks and citations omitted). Consequently, Burns has failed to point to any additional evidence that discovery could uncover which would bear on the merits of Harrison's Motion for Summary Judgment. Accordingly, the court denies Burns's request that the court delay consideration of Harrison's Motion for Summary Judgment until he has completed his discovery in this case.

### C. Absolute Privilege

Defendant Harrison seeks summary judgment on the ground that she enjoys an absolute privilege for the statements she made in her affidavit submitted to the Iowa District Court during the pendency of the McFarlands' divorce. Burns brings his claims against Harrison under Iowa common law. When state law creates a cause of action, state

12

law also determines whether there is a defense of immunity, unless the state rule is in conflict with federal law. *See Ferri v. Ackerman,* 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."); *see* also *Davidson v. Cannon,* 474 U.S. 344, 359 (1986) ("A State can define defenses, including immunities, to state-law causes of action, as long as the state rule does not conflict with federal law."); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982) ("Of course, the State remains free to create substantive defenses or immunities for use in adjudication--or to eliminate its statutorily created causes of action altogether--just as it can amend or terminate its welfare programs."); *Vega-Mena v. United States*, 990 F.2d 684, 691 (1st Cir. 1993) (quoting *Ferri*, 444 U.S. at 198); *Brown v. City of Clewiston*, 848 F.2d 1534, 1542 n.17 (11th Cir. 1988) (same); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) ("The Constitution does not create a fundamental right to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational."). In this diversity case, then, the court will ascertain and apply Iowa law in an effort to reach the same result that Iowa courts would reach.

Iowa recognizes an absolute privilege from liability for communications which take place in a judicial proceeding. *Spencer v. Spencer,* 479 N.W.2d 293, 295 (Iowa 1991) ; *Robinson v. Home Fire & Marine Ins. Co.,* 49 N.W.2d 521, 524-27 (1951). "The purpose of the absolute privilege is to encourage the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings." *Spencer,* 479 N.W.2d at 295; RESTATEMENT (SECOND) OF TORTS § 588, cmt. a (1977) ("The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it

is necessary therefore that a full disclosure not be hampered by fear of private suits for defamation.").[3] In recognizing this absolute privilege, the Iowa Supreme Court has cited with approval provisions of the Second Restatement of Torts, including § 588, which recognizes the application of an absolute privilege in the context of communications made as part of a judicial proceeding. *See Spencer,* 479 N.W.2d at 295 (citing RESTATEMENT (SECOND) OF TORTS §§ 586-88 (1977)); *see also Kennedy v. Zimmerman*, 601 N.W.2d 61, 64 (Iowa 1999) (applying the Second Restatement of Torts § 586 to determine whether attorney's statements were absolutely privileged); *Tallman v. Hanssen*, 427 N.W.2d 868, 869 (Iowa 1988) (noting that Iowa's rule concerning an absolute privilege for statements made as part of a judicial proceeding was derived from the Second Restatement of Torts

---

[3]The Seventh Circuit Court of Appeals has explained the purpose for applying this absolute privilege to witnesses:

> [T]he privilege is especially designed for the protection and encouragement of disinterested lay witnesses. Since they have no stake in the case and cannot be paid more than a nominal fee for testifying, they would be highly reluctant to testify if the threat of a defamation suit hung over their heads. It would be cruel to force them by testifying to assume that risk. Expert witnesses, in contrast, could be paid to assume the risk. Nevertheless they are not excepted from the privilege, and that is sensible. Litigation is costly enough without judges making it more so by throwing open the door to defamation suits against expert witnesses. That would not only tend to turn one case into two or more cases (depending on the number of expert witnesses), but also drive up expert witnesses' fees; expert witnesses would demand as part of their fee for testifying compensation for assuming the risk of being sued because of what they testified to.

*McGregor v. Rutberg*, 478 F.3d 790, 792 (7th Cir. 2007)(citations omitted).

§ 586); *Robinson v. Home Fie & Marine Ins. Co.*, 49 N.W.2d 521, 525 (Iowa 1951) (looking to Restatement of Torts § 586 in ascertaining whether attorney's statements were absolutely privileged); *White & Johnson, P.C. v. Bayne*, 670 N.W.2d 430, 2003 WL 21696938, at *3 (Iowa Ct. App. July 23, 2003) (recognizing an attorney or party's absolute privilege under Iowa law and citing *Spencer's* reference to the Second Restatement of Torts §§ 586-88) (unpublished table decision).

Although the Iowa Supreme Court has not yet explicitly adopted an absolute privilege for witnesses testifying in a judicial proceeding, many other states have done so. *See Ingber v. Mallilo,* 52 A.D.3d 569, 860 N.Y.S.2d 180, 181 (2008) (noting that statements made by "witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, as long as they are material and pertinent to the issue to be resolved in the proceeding."); *Offen v. Brenner,* 402 Md. 191, 935 A.2d 719, 724 (2007) (recognizing that Maryland law provided an "absolute privilege for statements made by a witness in the course of judicial proceedings."); *McKinney v. Chapman,* 103 Conn. App. Ct. 446, 929 A.2d 355, 359 (2007) (noting that in Connecticut the doctrine of absolute privilege, which protects otherwise defamatory statements made in the context of judicial or quasi-judicial proceedings, extends to witnesses); *Fisher v. Lint,* 69 Mass. App. Ct. 360, 868 N.E.2d 161, 167 (2007) (noting that under Massachusetts law statements made by witness "in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith."); *Mahoney & Hagberg v. Newgard,* 729 N.W.2d 302, 306 (Minnesota 2007) (observing that under Minnesota law, "[s]tatements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial

proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation."); *Fullerton v. Florida Med. Ass'n, Inc.,* 938 So.2d 587, 592 (Fla. Dist. Ct. App. 2006) (noting that "'defamatory statements made in the course of judicial proceedings by parties, witnesses and counsel are absolutely privileged, no matter how false or malicious those statements might be, provided the statements are relevant to the subject of the inquiry.'") (quoting *Fariello v. Gavin,* 873 So.2d 1243, 1245 (Fla. Dist. Ct. App. 2004)); *Oesterle v. Wallace,* 272 Mich. Ct. App. 260, 725 N.W.2d 470, 474 (2006) ("Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried."); *Montemayor v. Ortiz,* 208 S.W.3d 627, 652 (Tex. App. 2006) ("Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case.") (citation omitted); *Smith v. Hodges,* 199 S.W.3d 185, 193-94 (Ky. Ct. App. 2005) (holding that statements made by witness in deposition were subject to the "judicial proceedings privilege."); *State ex rel. Oklahoma Bar Ass'n v. Dobbs,* 94 P.3d 31, 45 (Okla. 2004) ("Oklahoma has long recognized that attorneys, parties and witnesses are immune from *defamation and certain other suits* where those suits are based upon communications made *during or preliminary to judicial proceedings* as long as the communication is in some way relevant to the proceeding.") (emphasis original); *Wright v. Truman Road Enters., Inc.,* 443 S.W.2d 13, 15 (Mo. Ct. App. 1969) (adopting a rule of absolute privilege for witnesses testifying in a judicial proceeding). Burns has not offered any contrary legal authority which would even suggest that the Iowa

Supreme Court would not adopt an absolute privilege for witnesses testifying in a judicial proceeding.

This line of authorities, combined with the Iowa Supreme Court's explicit adoption of an absolute privilege for attorneys found in the Second Restatement of Torts § 586, and its citation with approval to both the Second Restatement of Torts § 587, pertaining to parties' entitlement to an absolute privilege, and § 588, leads the court to conclude that if faced with the facts of this case, the Iowa Supreme Court would explicitly adopt an absolute privilege for witnesses testifying in a judicial proceeding found in the Second Restatement of Torts § 588.

### D. *Analysis of Statement*

Having concluded that Iowa would recognize the privilege, the question then is whether the privilege applies in this case to the statements contained in Harrison's affidavit. Section 588 of the Second Restatement of Torts states in its entirety, "A witness in judicial proceedings is privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588 (1977).

Whether a communication by a witness satisfies the requirements of § 588 turns on a two-part analysis. First, the communication must have been made "preliminary to a proposed judicial proceeding, or during the course and as a part of a judicial proceeding." RESTATEMENT (SECOND) OF TORTS § 588; *see Smith*, 199 S.W.3d at 193 (applying two part test under § 588 of the Second Restatement of Torts to determine if witness's statement was absolutely privileged); *cf. Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 ((8th Cir. 1979) (applying almost identical two part test under § 586 of the Second

17

Restatement of Torts to determine if attorney's communication was absolutely privileged); *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990) (applying near identical two part test under § 587 of the Second Restatement of Torts to determine if an absolute privilege applied to communications made by party). Second, it must be determined that the communication "has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588; *see Smith*, 199 S.W.3d at 193-94; *cf. Asay*, 594 F.2d at 697; *General Elec. Co.*, 916 F.2d at 1127. The Iowa Supreme Court has defined a judicial proceeding as "'one carried on in a court of justice or recognized by law, wherein the rights of parties which are recognized and protected by law are involved and may be determined.'" *Kennedy*, 601 N.W.2d at 65 (quoting *Mills v. Denny*, 63 N.W.2d 222, 226 (Iowa 1954)).

Here, there is no dispute that Harrison's statements were made as part of a judicial proceeding since the statements were contained in her affidavit submitted to the Iowa District Court handling the McFarlands' divorce case. Harrison's statements also meet the second requirement, having some relation to the proceeding, because her affidavit was submitted to the court on the issues of child custody and property distribution. Accordingly, it is clear that Harrison's statements contained in her affidavit are protected by an absolute privilege. Burns's defamation claim against Harrison, therefore, fails as a matter of law. Because Burns's other claims against Harrison are based exclusively on the statements contained in her affidavit, they fail for the same reason. *See MSK EyEs Ltd. v. Wells Fargo Bank*, 546 F.3d 533, (8th Cir. 2008) (holding under Minnesota law that an absolute privilege bars not only defamation claims but also claims sounding in defamation); *Pinto v. Internationale Set Inc.,* 650 F. Supp. 306, 309 (D. Minn. 1986) (holding that "plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defamation."); *In re Moore*, 186 B.R. 962, 977 (Bankr. N.D. Cal. 1995) (holding that

18

absolute privilege "will defeat a tort action which, however labeled and whatever its theory of liability, is predicated upon publication of an injurious falsehood."); *Mahoney & Hagberg*, 729 N.W.2d at 310 (holding that witness's absolute privilege operates as a bar to all claims arising out of purported defamatory statements regardless of claim's label). Accordingly, defendant Harrison's Motion for Summary Judgment is granted.[4]

### III. CONCLUSION

For the reasons stated above, defendant Harrison's Motion for Summary Judgment is **granted**.

**IT IS SO ORDERED.**

**DATED** this 26th day of July, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[4] Having found that Harrison is entitled to summary judgment on all of Burns's claims on the ground that she enjoys an absolute privilege for the statements she made in her affidavit, the court need not consider Harrison's alternative bases for summary judgment.