**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BURNS F. MCFARLAND,

          Plaintiff,

vs.

ROBIN MCFARLAND, et al.,

          Defendants.

No. C08-4047-MWB
No. C09-4047-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANTS
ROBIN MCFARLAND, ROBIN'S
SCHOOL OF DANCE AND
TUMBLING, ROBERT VAN ES AND
RHONDA ES'S MOTIONS TO
STRIKE AND MOTIONS FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*II.  WHAT RECORD CAN BE CONSIDERED?* . . . . . . . . . . . . . . . . . . . . 12
    *A.  Standards For Motion To Strike* . . . . . . . . . . . . . . . . . . . . . . 12
    *B.  Motion To Strike* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*III.  MOTION FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . 14
    *A.  Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . 14
    *B.  Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        *1.    Issue preclusion under Iowa law* . . . . . . . . . . . . . . . . 16
        *2.    Application of issue preclusion principles* . . . . . . . . . . . 19
        *3.    Absolute privilege* . . . . . . . . . . . . . . . . . . . . . . . . 22

*IV.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# I.  INTRODUCTION AND BACKGROUND

## A.  Factual Background

The summary judgment record reveals the following undisputed facts.  Plaintiff Burns H. McFarland ("Burns") is a resident of Mississippi.   Burns is an attorney. Defendants Robert Van Es ("Robert") and Rhonda Van Es ("Rhonda") (collectively "the Van Es's"), as well as  Robin McFarland a.k.a. Robin Van Es ("Robin") are residents of Iowa.  Robert and Rhonda are Robin's parents.  Robin is the owner of defendant Robin's School of Dance and Tumbling ("Robin's School of Dance") in Sioux Center, Iowa. Burns and Robin were married on June 11, 2004.  They have one son, HRBM.  On June 4, 2007, Robin filed for divorce in the Iowa District Court for Sioux County.

Robin solicited affidavits for use in her divorce proceedings in obtaining temporary physical custody of HRBM.  To obtain affidavits, Robin and her friend, Dori Groenendyk, sent the following email to the parents of students at Robin's School of Dance:

> Dear Dance Parents:
>
> Robin is in a very difficult situation right now, and could use your help if you are willing.
>
> She has struggled for the past several years in a marriage with an abusive husband, Burns.  Many of you have seen evidence of this.  Robin has been forced to leave her home temporarily to get away from this, and needs many affidavits from friends

2

and family to help her retain custody of [HRBM] and to be able to move back to her home.

If you could fill out an affidavit and have it notarized regarding the following subjects: Robin's character-as a mom, as a person, as a teacher; Burns' [sic] character, actions, words, that you have observed that would make him an unsuitable parent, and also would give reason for him to be ordered to leave Robin's house; any situations, words, actions of abuse or verbal or emotional violence that you've observed yourself. Also, any neglect of [HRBM] that you've observed. Please remember it has to be what you've observed, not been told by Robin or anyone else. We desire to be completely honest in all of this, and are not asking you to write anything other than what you have seen yourself.

These do not have to be long, a few sentences of something you've seen would be great. Forms are available to pick up at Dori's house: [Dori's address]. Please return all affidavits to Dori's house by Friday morning.

Thank you so much for your help. Robin really needs you right now. Please pray for her to walk closely with the Lord through this terrible time.

Yours,
Robin and Dori

Email at 1, Plaintiff's Supplemental App. at 1. Robin filed forty-five affidavits to support her request for temporary physical custody of HRBM.

Robert submitted two affidavits for Robin during her divorce and Rhonda provided three affidavits. Robert's affidavits were executed on June 8, 2007, and August 15, 2007, and filed June 8th and August 16th. Robert personally prepared the content of his affidavits. Rhonda's affidavits were executed on June 8, 2007, August 14, 2007, and

May 12, 2008, and were filed June 8th and August 16th.  Rhonda personally prepared the content of her affidavits.

Trial in Burns and Robins's divorce began on November 4, 2009, with Iowa District Court Judge Jeffrey A. Neary presiding.  The trial continued on November 5, and 6, 2009, and then reconvened on November 17, and continued on until November 23, 2009.  During the trial, Judge Neary heard testimony from Burns and Robin as well as the following witnesses:  Kim Scorza, a child custody evaluator; Dr. Andre Clayborne, an educational psychologist; Dr. Michael Baker, a psychologist; Teresa McElroy, a licensed social worker; Robert Hall, a HealthOne, Inc. employee; Mark Zwart, a HealthOne, Inc. employee; Robert McFarland, Vice President of HealthOne, Inc. and Burns's son; Marty Wallace, a licensed mental health care counselor and play therapist; and HRBM's counselor; Dr. Eli Chesen, a psychiatrist/neurologist; and John Visser, a businessman and Burns's friend.  In addition to the live testimony presented at trial, deposition testimony was received from Robert and Rhonda, and the following individuals:  Stacey Hofer-Ahrenstorff, a mental health counselor; Dr. Daniel Dees, a psychiatrist; Kirbee VanDeBerg, Robin's daughter from her first marriage; Troy VanDeBerg, Robin's first husband; Dr. Shawn Scholten, a psychologist and therapist for Robin's daughter Kirbee; Dr. Thomas Price, a psychologist; Karen Peters, Robin's friend and employee of Robin's School of Dance; Kelsey Schmidt, a babysitter for HRBM; Shawna Van Wyhe, a babysitter for HRBM; Colleen Horstman, a house cleaner of Robin's; Shelly Gesink, a house cleaner of Robin's; Niccie Kliegl, a friend of Robin's; Kimber Kroschell, a friend of Robin; Tyler Knobloch, a friend of Robin's; Craig DeHaan, an acquaintance of Robin and Burns; Dori Groenendyk, a friend of Robin's; Brenda Scheiteman, a friend and spiritual mentor of Robin's; Denise Harrison, a loan officer at American State Bank; Cherilynn Rozeboom, a trust officer at American State Bank; Ellen Bennett, Burns's friend

4

and employee of HealthOne, Inc.; Mary Harelson, Burns's friend and employee of HealthOne, Inc.; Denise McKnight, Burns's friend and employee of HealthOne, Inc.; Michelle Watson, Burns's friend and employee of HealthOne, Inc.; and Susan McFarland, Burns's mother.  After trial, Judge Neary gave Burns three weeks to submit additional evidence.

On May 6, 2010, Judge Neary filed a Decree of Dissolution of Marriage in *McFarland v. McFarland*, Equity No. CDCD021600 (Iowa Dist. Court, Sioux County). In his ruling, Judge Neary made extensive findings of fact.  He discussed Robin's soliciting affidavits for use in her divorce, explaining:

> At the onset of this case, Robin sought to obtain affidavits from many individuals and she was assisted by her friend Dori Groenendyk.  They solicited by email affidavits in favor of Robin's claim for temporary physical custody of H.R.B.M. at a hearing on temporary matters early on. . . To dispel the concerns raised with regard to the affidavits, this Court has not given any weight to affidavits in evidence.  This Court has only considered the testimony and other documentary evidence presented in reaching the conclusions and findings herein.  Further, the Court concludes from review of the testimony and other evidence that the witnesses presented here did not in any significant way rely on the content of the hotly contested affidavits.

Divorce Decree at 11, Plaintiff's App. at 75.

Judge Neary further found Burns had been using hydrocodone for over ten years and was addicted to it, and that Burns illegally smoked marijuana in Robin's home.[1]

---

[1]Hydrocodone is a narcotic used as a pain reliever.  It is classified as controlled substance.  It and compounds containing it are marketed under a number of trademarks, including Vicodin, Hydrococet, Symtan, Anexsia, Biocodone, Hycomine, Hycet, Lorcet, Lortab, Norco, Novahistex, Hydrovo, Duodin, Kolikodol, Orthoxycol, Panacet, Zydone,

(continued...)

Divorce Decree at 10, Plaintiff's App. at 74.  In addition, Judge Neary found Burns and his company, HealthOne, Inc., had not filed tax returns for several years and, as a result, Burns was the subject of a criminal tax investigation.  Divorce Decree at 11-12, Plaintiff's App. at 75-76.

Judge Neary also found Burns emotionally and verbally abused Robin during the marriage, and that Burns subjected Robin to "rough and perverted sex."[2]  Divorce Decree at 11-12, Plaintiff's App. at 75-76.  On June 4, 2007, Robin and HRBM sought refuge in an area abuse shelter.  Robin subsequently filed for an order of protection, alleging she was the victim of abuse.  Divorce Decree at 14, Plaintiff's App. at 78.  Judge Neary observed:

> From the various witnesses both live and by deposition, the Court sees a clear picture of what it must have been like living around Burns McFarland.  He had to be in control, had to be respected, and had to be revered.  When this was not happening, he became angry, exercised control through intimidation and fear thereby getting what he expected.  Generally the testimony about was described as emotional and verbal abuse is found to be credible.  . . . [T]he evidence of abuse when confirmed  by the experts is clear and sufficient in

---

[1](…continued)
Mercodinone, Synkonin, Norgan, Xodol, and Hydrokon.  *See* Wikipedia, *Hydrocodone, available at* http://en.wikipedia.org/wiki/Hydrocodone (last visited September 8, 2011).

[2]Judge Neary noted that Dr. Dees found Burns had sexually abused Robin.  Divorce Decree at 23, Plaintiff's App. at 23.  Dr. Price agreed with Dr. Dees's diagnosis, concluding Robin had been a "victim of abusive sexual practices."  Divorce Decree at 24, Plaintiff's App. at 88.  Another expert witness, Stacey Hofer-Ahrenstorr, was of the opinion that Robin had been "a victim of abuse from her time together with Burns."  Divorce Decree at 22, Plaintiff's App. at 86.  Judge Neary concluded Hofer-Ahrenstorr's opinions were "well founded" and he placed "significant import in her opinions."  Divorce Decree at 22-23, Plaintiff's App. at 86-87.

> its quantity and quality for this Court to find that Burns
> subjected Robin to emotional and verbal abuse.   He was
> controlling, sometimes dictatorial, and manipulative of Robin
> during their marriage.  He exercised control of Robin through
> financial means, physical means, and emotional means.

Divorce Decree at 11, Plaintiff's App. at 75.  In making these observations, Judge Neary

noted one expert witness, Kim Scorza, who was ordered to conduct a child custody

evaluation as part of the divorce proceedings, observed what she termed as "appalling

treatment by Burns of Robin" and characterized it "as the worst she'd seen in 20 years of

work." Divorce Decree at 18, Plaintiff's App. at 82. Judge Neary concluded Robin was

the parent most capable to administer to HRBM's long term best interests and awarded

physical custody to her.

In addition to determining custody of HRBM, Judge Neary made findings

concerning property division and alimony.  Judge Neary found:

> Financially, Robin did not have a mortgage on her
> home in Sioux Center prior to her marriage to Burns.  Her
> current mortgage is about $175,000.   This mortgage was
> added after Robin and Burns were married.  After the honey
> moon Burns needed $50,000 for his business and they
> borrowed the money from PrimeBank.  Burns told Robin that
> HealthOne, Inc. would pay off the loan in one year.  In a
> month Burns needed $10,000 more so they rewrote the note
> for $80,000.  From this new loan the $50,000 first note was
> paid off and the other $30,000 went to Burns.  A year later,
> the loan came due and neither Burns, Robin, nor HealthOne,
> Inc. could pay off the note so they ended up borrowing more
> money.   A $175,000 mortgage was taken out.   This new
> amount went to pay off the $80,000 prior note with Prime
> Bank, a $20,000 note at American State Bank borrowed for
> Robert McFarland to buy a car and $28,000 was for Robin to
> use in work to be done on her home.  The rest of the money
> paid advances on the previous loan made to Burns or was used

> by Burns in his business.  Robin agrees that of this bank loan,
> $28,000 is her responsibility but she seeks to have the balance
> paid back by Burns either directly or in the form of alimony.

Divorce Decree at 13-14, Plaintiff's App. at 82.  Judge Neary ultimately ordered Burns to pay reimbursement alimony to Robin each month until the loan at PrimeBank was satisfied.

Burns appealed.  On April 13, 2011, the Iowa Court of Appeals affirmed Judge Neary's decision.  *See McFarland v. McFarland*, 801 N.W.2d 32, 2011 WL 1376783, at *3 (Iowa Ct. App. Apr. 13, 2011) (unpublished table decision).  Procedendo was issued on May 12, 2011.  Burns did not seek further review from the Iowa Supreme Court.

## B.  *Procedural Background*

On June 11, 2008, Burns filed his *pro se* Complaint in case no. C08-4047-MWB, against Robin, Dori Groenendyk ("Groenendyk"), and Robin's School of Dance & Tumbling.  In that lawsuit, Burns alleges that Robin falsely accused him of domestic abuse in connection with their divorce proceedings and that Groenendyk and Robin's School of Dance & Tumbling conspired with Robin to slander, libel and defame Burns. Burns also alleges that defendants tortuously interfered with Burns's prospective business relations. On June 5, 2009, Burns filed his *pro se* Complaint in case no. C09-4047-MWB, against a number of defendants, including Robin, Robin's School of Dance & Tumbling, Robert, and Rhonda.[3]  This second lawsuit also alleges actions taken by defendants in connection with the McFarlands' divorce.  Specifically, Burns alleges that defendants conspired to slander, libel and defame him; to tortiously interfere with his business relationships; and to commit fraud and fraud in the inducement.  On July 1, 2009, Case no. C08-4047-MWB

---

[3]This Complaint named 60 defendants.

was consolidated, pursuant to Federal Rule of Civil Procedure 42(a)(2), with Case no. C09-4047-MWB, because both cases involved common questions of law and fact.   On August 27, 2009, Burns filed an Amended Complaint.[4]   In his Amended Complaint, Burns again alleges the following claims against defendants:   civil conspiracy (Count I); intentional infliction of emotional distress (Count II); invasion of privacy-false light (Count III); defamation-libel (Count IV); defamation-slander (Count V); tortious interference with business relations (Count VI); negligent infliction of emotional distress (Count VII); and, fraud and/or fraud in the inducement (Count VIII).[5]   In addition, Burns requests that punitive damages be assessed against defendants and he be awarded his attorney fees and costs.

On October 1, 2010, Robin and Robin's School of Dance, Robert, and Rhonda (collectively "defendants") filed motions for summary judgment requesting that I dismiss all claims against them pursuant to Federal Rule of Civil Procedure 56.   In her motion, Robin asserts she made no statements defaming Burns outside of Burns's and Robins's divorce proceedings, and her statements made as part of her divorce proceedings are privileged.   She specifically  contends her solicitation of affidavits for use in her divorce proceedings or other statements she made in connection with her divorce proceedings are protected by absolute privilege and Burns's defamation claims based on that solicitation or those statements necessarily fail.   Robin also contends there is no evidence supporting Burns's claim that she conspired with others to harm him.   Robin also asserts Burns's claims are barred by issue preclusion resulting from findings of the Iowa District Court in

---

[4]The Amended Complaint named 42 defendants.   Robin and Robin's School of Dance, Robert, and Rhonda are the only defendants remaining.

[5]Burns voluntarily dismissed his claims for tortious interference with business relations on February 9, 2010.

their divorce case.  Robin further contends that Burns cannot designate specific facts showing that there are genuine issues for trial.  Robert and Rhonda similarly assert that they are entitled to summary judgment on all of Burns's claims against them because they made no statements defaming Burns outside of Burns's and Robins's divorce proceedings, and their statements made during the divorce proceedings are privileged.  Burns has filed timely *pro se* responses in which he asserts that he has adequately supported his claims by submitting materials showing that there are genuine issues for trial.  Burns also argues defendants are not entitled to absolute immunity because they acted to intentionally harm him while acting outside the divorce proceedings.  Defendants filed timely reply briefs.

At the same time defendants filed their motions for summary judgment, they also filed a Motion to Continue Trial and requested I stay the case until the appeal of Robin and Burns's divorce case, *McFarland v. McFarland*, Equity No. CDCD021600 (Iowa Dist. Court, Sioux County), was concluded.  Defendants argued that certain factual findings in the divorce case, if affirmed on appeal, would be entitled to preclusive effect on defendants' motions for summary judgment.  Burns filed a *pro se* resistance to the motion, arguing that I was not bound by Judge Neary's factual findings.  I granted the defendants' Motion to Continue Trial and stayed the case until the appeal in *McFarland v. McFarland*, Equity No. CDCD021600 (Iowa Dist. Court, Sioux County), was concluded.   On April 13, 2011, the Iowa Court of Appeals issued its opinion affirming the divorce decree.  *See McFarland v. McFarland*, 801 N.W.2d 32, 2011 WL 1376783, at *3 (Iowa Ct. App. Apr. 13, 2011) (unpublished table decision).  After the procedendo was issued, Burns filed a Motion to Supplement Plaintiff's Response to Defendants' Motions for Summary Judgment.  I granted Burns's motion and allowed the parties an opportunity to submit supplemental briefs addressing what, if any, preclusive effect the final judgment in *McFarland v. McFarland*, Equity No. CDCD021600 (Iowa Dist. Court, Sioux County) has

on defendants' pending motions for summary judgment.  On May 20, 2011, the parties filed their supplemental briefs regarding defendants' motions for summary judgment.  In their briefs, defendants argue summary judgment should be granted in their favor based on issue preclusion.  Burns counters that defendants cannot establish the four required elements for invoking issue preclusion.  Alternatively, Burns contends, if defendants meet the requirements for issue preclusion, that I should, nevertheless, not apply that doctrine because he was not afforded a full and fair opportunity to litigate the issues in his dissolution case.  In addition to submitting his supplemental brief, Burns also filed evidentiary material.  On May 31, 2011, Robin filed her reply brief.  She objected to Burns's filing of additional evidentiary materials, arguing that these materials should be disregarded because their submission exceeded my supplemental briefing order and Burns also violated Federal Rule of Civil Procedure 56(e) because there was no table of contents and the pages are not consecutively numbered.  On May 31, 2011, the Van Es's filed a joinder of Robin's reply brief.  The Robert and Rhonda joined in Robin's objection to Burns's submission of additional evidentiary materials.  On June 1, 2011, Burns filed a Second Supplemental Brief In Opposition to Defendants' Motions for Summary Judgment.  Burns again contends that defendants cannot establish the four required elements for invoking issue preclusion.  Burns filed additional evidentiary materials, including his own affidavit dated May 27, 2011, with his Second Supplemental Brief.

On June 9, 2011, Robin filed a Motion To Strike in which she seeks to strike Burns's May 27th affidavit.  Robin asserts Burns's affidavit should be stricken because the discovery deadline has passed and they will be prejudiced by the belated injection of Burns's affidavit.  She also argues that Burns's affidavit is improper evidence because it contains hearsay, conclusory, and self-serving allegations and statements not based on personal knowledge and/or statements made without support in the record.  On June 16,

2011, Burns filed his Brief In Opposition To Defendants' Motion to Strike Plaintiff's Affidavit.   In his resistance, Burns argues his affidavit is based on personal knowledge and that any hearsay statements it may contain fall within an exception to the hearsay rule. On June 23, 2011, the Van Es's file a joinder with Robin's Motion to Strike.

## II.  WHAT RECORD CAN BE CONSIDERED?

Before I can consider the merits of defendants' motions for summary judgment, I must first consider Robin's Motion to Strike.   This motion goes to what record I can consider in resolving defendants' motions for summary judgment.

### A.  Standards For Motion To Strike

Rule 12 of the Federal Rules of Civil Procedure provides for a motion to strike, as follows:

> (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>> (1) on its own; or
>> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f).[6]

In ruling on a Rule 12(f) motion, the court "enjoy[s] liberal discretion," and its ruling is reviewed only for abuse of that discretion.   *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007); *Nationwide Ins. Co. v. Central Missouri*

---

[6] The language of Rule 12(f) was "restyled" by the 2007 Amendments, but, again, the changes were intended to be stylistic only. Fed.R.Civ.P. 12, advisory committee's note.

*Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir.2001); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 863–64 n. 3 (8th Cir.1997). The rule embodies this discretion, because it is cast in permissive terms ("the court may act …") rather than mandatory terms. Fed. R. Civ. P. 12(f); *see also Stanbury*, 221 F.3d at 1063 ("Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys 'liberal discretion' thereunder."). The Eighth Circuit Court of Appeals has also recognized that, "[d]espite this broad discretion … striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury*, 221 F.3d at 1063 (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977), in turn citing 5 Wright & Miller, Federal Practice and Procedure: Civil § 1380 at 783 (1969)); *accord BJC Health Sys.*, 478 F.3d at 917 (citing *Stanbury*). Applying these standards, the Eighth Circuit Court of Appeals has ruled that even matters that are not "strictly relevant" to the principal claim at issue should not necessarily be stricken, if they provide "important context and background" to claims asserted or are relevant to some object of the pleader's suit. *Id.*

### B.  Motion To Strike

Defendants seek to strike Burns's May 27th affidavit.  Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Under Rule 7(a) of the Federal Rules of Civil Procedure, the only "pleadings" allowed are the following: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer. " *Id.*

Here, defendants are not seeking to strike matter from a pleading, but, instead, are attempting to strike an affidavit offered in support of Burns's resistance to defendants' motions for summary judgment.  As a result, defendants' Motion to Strike is improper under Rule 12(f) of the Federal Rules of Civil Procedure, and, consequently, is denied.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . .").  Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, "the substantive law will identify which facts are material."  *Anderson*, 477 U.S. at 248.  An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-

14

87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods,* 409 F.3d at 990 (quoting *Anderson,* 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.,* 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex,* 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.,* 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'") (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995)).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano,* 129 S. Ct. 2658, 2677 (2009) quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

15

> functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586-87 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

I will apply these standards to defendants' motions for summary judgment.

## B.  Analysis

### 1.   Issue preclusion under Iowa law

Defendants seek summary judgment on the ground of issue preclusion, a subset of res judicata.[7]   In a diversity case, the application of issue preclusion is governed by the preclusion rules of the forum that provided the substantive law underlying the prior judgment. *Follette v. Wal-Mart Stores, Inc.,* 41 F.3d 1234, 1237 (8th Cir. 1994); *see*

---

[7]The term "res judicata" includes both issue and claim preclusion. *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 515 (8th Cir. 1995).  Before diving into the substance of the parties' arguments, it is important to first briefly review the nomenclature most commonly used in discussing the preclusive effect of a prior court judgment.  Issue preclusion, or collateral estoppel is a doctrine that bars relitigation of an issue identical to the issue actually litigated in the previous action. *Popp Telcom v. Am. Sharecom, Inc.,* 210 F.3d 928, 939 (8th Cir. 2000).  Claim preclusion bars litigation of claims that were litigated, or could have been litigated, in the previous action. *Id.* at 940 n.13. In this case, defendants allege that Burns's claims against them are barred by issue preclusion.

*Laaase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) ("The law of the forum that rendered the first judgment controls the res judicata analysis.") (quoting *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821 (8th Cir. 2008)); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir. 2002) ("[I]t is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.") (citation and internal quotation marks omitted); *see also Conwed Corp. v. Union Carbide Corp.*, 443 F.3d 1032, 1037-38 (8th Cir. 2006); *Hilary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997). Iowa law, then, governs whether issue preclusion applies in this case. *See Schooley v. Orkin Exterminating Co.*, 502 F.3d 759, 764 (8th Cir. 2007) (applying Iowa law). Thus, the question presented here is whether the Iowa state courts would give preclusive effect to the McFarland's divorce judgment.

The Iowa Supreme Court recently offered this explanation of issue preclusion:

> [T]he doctrine of issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

*Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 103-04 (Iowa 2011) (quoting *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981) (quoting in turn RESTATEMENT (SECOND) OF JUDGMENTS § 68 (Tentative Draft No. 4, 1977) (now RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)) (footnote omitted)); *see Comes v. Microsoft Corp.*, 709 N.W.2d 114, 118 (Iowa 2006); *Gardner v. Hartford Ins. Accident & Idem. Co.*, 659

17

N.W.2d 198, 202 (Iowa 2003). Issue preclusion "serves two important goals of providing fairness to the successful party in the first case and promoting efficient use of court resources by prohibiting repeated litigation over the same issue." *Hunter,* 742 N.W.2d at 584.

Under Iowa law, issue preclusion may be used defensively as a "shield" or offensively as a "sword." *Hunter*, 300 N.W.2d at 123; *see Schafer*, 797 N.W.2d at 104; *Fischer v. City of Sioux City*, 654 N.W.2d 554, 546-47 (Iowa 2002); *Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991). Defensive use of issue preclusion generally refers to "a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense." *Hunter,* 300 N.W.2d at 123. Offensive use, on the other hand, typically refers to "a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim." *Id.*

The party asserting issue preclusion must establish four elements:

> "(1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment."

*Schafer*, 797 N.W.2d at 104 (quoting *Fischer,* 654 N.W.2d at 547); *accord George v. D.W. Zinser Co.*, 762 N.W.2d 865, 868 (Iowa 2009); *Chamberlain, L.L.C. v. City of Ames*, 757 N.W.2d 644, 648 (Iowa 2008); *Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 397 (Iowa 1988). In addition, the Iowa Supreme Court "has modified the traditional requirement of privity where the doctrine is invoked in a defensive manner." *Hunter*, 300 N.W.2d at 123. Issue preclusion may be applied defensively "between

nonmutual parties where the four requisites delineated above are satisfied and where the party against whom the doctrine is invoked defensively 'was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution.'" *Id.* (quoting *Bertran v. Glens Falls Ins. Co.,* 232 N.W.2d 527, 533 (Iowa 1975)).

### 2.   *Application of issue preclusion principles*

I turn to examine whether defendants can establish the required elements for invoking issue preclusion.  The first two prerequisites mandate that the issue concluded in the prior litigation is identical to the issue currently before the court and that the issue was raised and litigated in the prior action.  *See Schafer*, 797 N.W.2d at 104; *George*, 762 N.W.2d at 868; *Chamberlain, L.L.C.*, 757 N.W.2d at 648 (Iowa 2008); *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123.  Here, the issues before me are:  (1) whether Robin, Robert, or Rhonda falsely accused Burns of using illegal drugs; (2) whether Robin, Robert, or Rhonda falsely accused Burns of being addicted to drugs; (3) whether Robin, Robert, or Rhonda falsely accused Burns of engaging in adultery; (4) whether Robin, Robert, or Rhonda falsely accused Burns of domestically abusing Robin; (5) whether Robin, Robert, or Rhonda falsely accused Burns of criminal activity, being a thief; (6) whether Robin, Robert, or Rhonda falsely accused Burns of not being a Christian; and  (7) whether Robin, Robert, or Rhonda falsely accused Burns of sexually abusing HRBM. Judge Neary addressed Burns's use of illegal drugs, his addiction to hydrocodone, his engaging in adultery with Robin at the beginning of their relationship, his verbal and/or emotional abuse of Robin in considering which parent should be awarded physical custody of HRBM.  Because the truth of these actions are precisely the issue before this court, it is evident that all of the issues, except those allegations about Burns not being a Christian,

his being a thief, and his sexually abusing HRBM, are identical and that these issues have been raised and litigated in the divorce case.

The next requirement of issue preclusion under Iowa law is that the issue was material and relevant to the disposition of the prior action. *See Schafer*, 797 N.W.2d at 104; *George*, 762 N.W.2d at 868; *Chamberlain, L.L.C.*, 757 N.W.2d at 648 (Iowa 2008); *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. "In child custody cases, the first and governing consideration is the best interests of the child." *In re Marriage of Bevers*, 326 N.W.2d 896, 898 (Iowa 1982); *see In re Marriage of Hansen,* 733 N.W.2d 683, 695 (Iowa 2007); *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). Under Iowa law, in considering what custody arrangement is in the best interest of the child, the court is required to consider several statutory factors. *See In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992). Those factors are:

> (a) whether each parent would be a suitable custodian for the child; (b) whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents; (c) whether the parents can communicate with each other regarding the child's needs; (d) whether both parents have actively cared for the child before and since the separation; (e) whether each parent can support the other parent's relationship with the child; (f) whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity; (g) whether one or both of the parents agree or are opposed to joint custody; (h) the geographic proximity of the parents; (j) whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation; and (j) whether a history of domestic abuse, as defined in section 236.2, exists.

Iowa Code § 598.41(3); *see In re Marriage of Hansen,* 733 N.W.2d at 695; *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007); *In re Marriage of Will*, 489 N.W.2d at 398. "[T]he courts must examine each case based on the unique facts and circumstances presented to arrive at the best decision." *In re Marriage of Hansen,* 733 N.W.2d at 700. As the Iowa Supreme Court has further observed:

> Physical care issues are not to be resolved based upon perceived fairness to the *spouses,* but primarily upon what is best for the *child*. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity. *Phillips v. Davis-Spurling,* 541 N.W.2d 846, 847 (Iowa 1995); *In re Marriage of Courtade,* 560 N.W.2d 36, 38 (Iowa Ct. App. 1996).

*In re Marriage of Hansen*, 733 N.W.2d at 695. Judge Neary found Burns had used marijuana, abused hydrocodone, and had a history of domestically abusing Robin. These findings led to a rebuttable presumption against joint custody. *See* IOWA CODE § 598.41(1)(b). Judge Neary concluded Burns had not rebutted the presumption against joint custody, and placed HRBM's physical care with Robin. Thus, because the custody determination necessarily involved determination of whether Burns used illegal drugs, had a drug addiction, and had domestically abused Robin, these issues were clearly material and relevant to the disposition of the divorce case.

Lastly, the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *See Schafer*, 797 N.W.2d at 104; *George*, 762 N.W.2d at 868; *Chamberlain, L.L.C.*, 757 N.W.2d at 648 (Iowa 2008); *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. For the reasons discussed above, it is clear that this prerequisite is also satisfied. Without the findings that Judge Neary

made, he could not have drawn the conclusion that a rebuttable presumption against joint custody existed.

Burns also argues that I should not apply the issue preclusion doctrine because he was not afforded a full and fair opportunity to litigate the issues in his divorce case. My review of the summary judgment record reveals that is not the case. Rather, Burns, who was represented by multiple lawyers, engaged in extensive discovery during his divorce case. Burns's divorce trial lasted eight days. After trial, Burns was permitted three weeks in which to submit additional evidence. Thus, I conclude Burns was provided a full and fair opportunity to litigate the issues in his divorce case.

Therefore, based on my examination of the four prerequisites, under Iowa law, I conclude that Judge Neary's decision precludes my consideration of those portions of Burns's claims based on allegations that Robin, Robert, or Rhonda falsely accused Burns of using illegal drugs; that Robin, Robert, or Rhonda falsely accused Burns of being addicted to drugs; or that Robin, Robert, or Rhonda falsely accused Burns of domestically abusing Robin.

### 3.    *Absolute privilege*

I must next consider defendants' assertion that their statements about Burns are absolutely privileged under Iowa law. Defendants argue that the comments made by them in their affidavits are absolutely privileged because they were made as part of a judicial proceeding. Burns brings his claims against defendants under Iowa common law. When state law creates a cause of action, state law also determines whether there is a defense of immunity, unless the state rule is in conflict with federal law. *See Ferri v. Ackerman,* 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."); *see also Davidson v. Cannon,* 474 U.S. 344,

22

359 (1986) ("A State can define defenses, including immunities, to state-law causes of action, as long as the state rule does not conflict with federal law."); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982) ("Of course, the State remains free to create substantive defenses or immunities for use in adjudication--or to eliminate its statutorily created causes of action altogether--just as it can amend or terminate its welfare programs."); *Vega-Mena v. United States*, 990 F.2d 684, 691 (1st Cir. 1993) (quoting *Ferri*, 444 U.S. at 198); *Brown v. City of Clewiston*, 848 F.2d 1534, 1542 n.17 (11th Cir. 1988) (same); *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) ("The Constitution does not create a fundamental right to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational."). In this diversity case, then, I will ascertain and apply Iowa law to reach the same result that Iowa courts would reach.

Iowa recognizes an absolute privilege from liability for communications which take place in a judicial proceeding. *Spencer v. Spencer,* 479 N.W.2d 293, 295 (Iowa 1991) ; *Robinson v. Home Fire & Marine Ins. Co.,* 49 N.W.2d 521, 524-27 (1951). "The purpose of the absolute privilege is to encourage the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings." *Spencer,* 479 N.W.2d at 295; RESTATEMENT (SECOND) OF TORTS § 588, cmt. a (1977) ("The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure not be hampered by fear of private suits for defamation.").[8] In recognizing this absolute privilege, the Iowa Supreme Court has cited

---

[8]The Seventh Circuit Court of Appeals has explained the purpose for applying this absolute privilege to witnesses:

(continued…)

with approval provisions of the Second Restatement of Torts, including § 588, which recognizes the application of an absolute privilege in the context of communications made as part of a judicial proceeding.  *See Spencer,* 479 N.W.2d at 295 (citing RESTATEMENT (SECOND) OF TORTS §§ 586-88 (1977)); *see also Kennedy v. Zimmerman*, 601 N.W.2d 61, 64 (Iowa 1999) (applying the Second Restatement of Torts § 586 to determine whether attorney's statements were absolutely privileged); *Tallman v. Hanssen*, 427 N.W.2d 868, 869 (Iowa 1988) (noting that Iowa's rule concerning an absolute privilege for statements made as part of a judicial proceeding was derived from the Second Restatement of Torts § 586); *Robinson v. Home Fie & Marine Ins. Co.*, 49 N.W.2d 521, 525 (Iowa 1951) (looking to Restatement of Torts § 586 in ascertaining whether attorney's statements were absolutely privileged); *White & Johnson, P.C. v. Bayne*, 670 N.W.2d 430, 2003 WL 21696938, at *3 (Iowa Ct. App. July 23, 2003) (recognizing an attorney or party's

---

[8](…continued)

> [T]he privilege is especially designed for the protection and encouragement of disinterested lay witnesses. Since they have no stake in the case and cannot be paid more than a nominal fee for testifying, they would be highly reluctant to testify if the threat of a defamation suit hung over their heads.  It would be cruel to force them by testifying to assume that risk. Expert witnesses, in contrast, could be paid to assume the risk. Nevertheless they are not excepted from the privilege, and that is sensible. Litigation is costly enough without judges making it more so by throwing open the door to defamation suits against expert witnesses. That would not only tend to turn one case into two or more cases (depending on the number of expert witnesses), but also drive up expert witnesses' fees; expert witnesses would demand as part of their fee for testifying compensation for assuming the risk of being sued because of what they testified to.

*McGregor v. Rutberg*, 478 F.3d 790, 792 (7th Cir. 2007)(citations omitted).

absolute privilege under Iowa law and citing *Spencer's* reference to the Second Restatement of Torts §§ 586-88) (unpublished table decision).

Although the Iowa Supreme Court has not yet explicitly adopted an absolute privilege for witnesses testifying in a judicial proceeding, many other states have done so. *See Ingber v. Mallilo,* 52 A.D.3d 569, 860 N.Y.S.2d 180, 181 (2008) (noting that statements made by "witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, as long as they are material and pertinent to the issue to be resolved in the proceeding."); *Offen v. Brenner,* 402 Md. 191, 935 A.2d 719, 724 (2007) (recognizing that Maryland law provided an "absolute privilege for statements made by a witness in the course of judicial proceedings."); *McKinney v. Chapman,* 103 Conn. App. Ct. 446, 929 A.2d 355, 359 (2007) (noting that in Connecticut the doctrine of absolute privilege, which protects otherwise defamatory statements made in the context of judicial or quasi-judicial proceedings, extends to witnesses); *Fisher v. Lint,* 69 Mass. App. Ct. 360, 868 N.E.2d 161, 167 (2007) (noting that under Massachusetts law statements made by witness "in the course of a judicial proceeding that pertain to that proceeding are absolutely privileged and cannot be used to support a civil liability even if the statements were uttered with malice or in bad faith."); *Mahoney & Hagberg v. Newgard,* 729 N.W.2d 302, 306 (Minnesota 2007) (observing that under Minnesota law, "[s]tatements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation."); *Fullerton v. Florida Med. Ass'n, Inc.,* 938 So.2d 587, 592 (Fla. Dist. Ct. App. 2006) (noting that "'defamatory statements made in the course of judicial proceedings by parties, witnesses and counsel are absolutely privileged, no matter how false or

25

malicious those statements might be, provided the statements are relevant to the subject of the inquiry.'") (quoting *Fariello v. Gavin,* 873 So.2d 1243, 1245 (Fla. Dist. Ct. App. 2004)); *Oesterle v. Wallace,* 272 Mich. Ct. App. 260, 725 N.W.2d 470, 474 (2006) ("Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried."); *Montemayor v. Ortiz,* 208 S.W.3d 627, 652 (Tex. App. 2006) ("Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made.  This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case.") (citation omitted); *Smith v. Hodges,* 199 S.W.3d 185, 193-94 (Ky. Ct. App. 2005) (holding that statements made by witness in deposition were subject to the "judicial proceedings privilege."); *State ex rel. Oklahoma Bar Ass'n v. Dobbs,* 94 P.3d 31, 45 (Okla. 2004) ("Oklahoma has long recognized that attorneys, parties and witnesses are immune from *defamation and certain other suits* where those suits are based upon communications made *during or preliminary to judicial proceedings* as long as the communication is in some way relevant to the proceeding.") (emphasis original); *Wright v. Truman Road Enters., Inc.,* 443 S.W.2d 13, 15 (Mo. Ct. App. 1969) (adopting a rule of absolute privilege for witnesses testifying in a judicial proceeding). Burns has not offered any contrary legal authority which would even suggest that the Iowa Supreme Court would not adopt an absolute privilege for witnesses testifying in a judicial proceeding.

   This line of authorities, combined with the Iowa Supreme Court's explicit adoption of an absolute privilege for attorneys found in the Second Restatement of Torts § 586, and

its citation with approval to both the Second Restatement of Torts § 587, pertaining to parties' entitlement to an absolute privilege, and § 588, leads the court to conclude that if faced with the facts of this case, the Iowa Supreme Court would explicitly adopt an absolute privilege for witnesses testifying in a judicial proceeding found in the Second Restatement of Torts § 588.

Defendants assert that they made no statements defaming Burns outside of the divorce proceedings, and that their statements, made as part of the divorce proceedings are privileged. Under Rule 56, when the moving parties, Robin, Robert, and Rhonda, in a motion for summary judgment, point to an absence of evidence in a plaintiff's case, the nonmoving plaintiff has the burden to come forward with specific facts showing there is a genuine issue for trial. Burns, as the nonmoving party, must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994). In the face of these assertions, however, Burns has failed to meet his burden. In his deposition, Burns was specifically asked "[w]hat has Bob Van Es done to you other than his affidavit and other than his deposition testimony?" Burns's Dep. at 1320, Robert Van Es's App. at 143. Burns answered, "I don't know what all he has done and what he hasn't done." Burns's Dep. at 1320, Robert Van Es's App. at 143. A similar question was posed to Burns concerning Rhonda: "Q. How about Rhonda Van Es, same? A. Yeah." Burns's Dep. at 1322, Robert Van Es's App. at 143. Similarly, in his answers to interrogatories, when asked for specific defamatory statements made by Rhonda, Burns answered only: "Rhonda Van Es affidavit from 6/8/07." Burns's Ans. to Int. No 4, Rhonda Van Es's App. at 32.

Having concluded that Iowa would recognize the privilege, the question then is whether the privilege applies in this case to the statements contained in Robert and

27

Rhonda's affidavits.  Section 588 of the Second Restatement of Torts states in its entirety, "A witness in judicial proceedings is privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588 (1977).

Whether a communication by a witness satisfies the requirements of § 588 turns on a two-part analysis.  First, the communication must have been made "preliminary to a proposed judicial proceeding, or during the course and as a part of a judicial proceeding." RESTATEMENT (SECOND) OF TORTS § 588; *see Smith*, 199 S.W.3d at 193 (applying two part test under § 588 of the Second Restatement of Torts to determine if witness's statement was absolutely privileged); *cf. Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 ((8th Cir. 1979) (applying almost identical two part test under § 586 of the Second Restatement of Torts to determine if attorney's communication was absolutely privileged); *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990) (applying near identical two part test under § 587 of the Second Restatement of Torts to determine if an absolute privilege applied to communications made by party).  Second, it must be determined that the communication "has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588; *see Smith*, 199 S.W.3d at 193-94; *cf. Asay*, 594 F.2d at 697; *General Elec. Co.*, 916 F.2d at 1127.  The Iowa Supreme Court has defined a judicial proceeding as "'one carried on in a court of justice or recognized by law, wherein the rights of parties which are recognized and protected by law are involved and may be determined.'" *Kennedy*, 601 N.W.2d at 65 (quoting *Mills v. Denny*, 63 N.W.2d 222, 226 (Iowa 1954)).

Here, there is no dispute that Robert and Rhonda's statements were made as part of a judicial proceeding since the statements were contained in their affidavits submitted

28

to the Iowa District Court handling the divorce case. Robert and Rhonda's statements also meet the second requirement, having some relation to the proceeding, because their affidavits were submitted to the court on the issues of child custody and property distribution. Accordingly, it is clear that Robert and Rhonda's statements contained in their affidavits are protected by an absolute privilege. Burns's defamation claims against them, therefore, fail as a matter of law. Because Burns's other claims against Robert and Rhonda are based exclusively on the statements contained in their affidavits, they fail for the same reason. *See MSK EyEs Ltd. v. Wells Fargo Bank*, 546 F.3d 533, 544 (8th Cir. 2008) (holding under Minnesota law that an absolute privilege bars not only defamation claims but also claims sounding in defamation); *Pinto v. Internationale Set Inc.,* 650 F. Supp. 306, 309 (D. Minn. 1986) (holding that "plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defamation."); *In re Moore*, 186 B.R. 962, 977 (Bankr. N.D. Cal. 1995) (holding that  absolute privilege "will defeat a tort action which, however labeled and whatever its theory of liability, is predicated upon publication of an injurious falsehood."); *Mahoney & Hagberg*, 729 N.W.2d at 310 (holding that witness's absolute privilege operates as a bar to all claims arising out of purported defamatory statements regardless of claim's label). Thus, Robert and Rhonda's motions for summary judgment are granted.

With respect to Robin, Burns points to statements Robin made to her Bible study class concerning his abuse, drug use, and addiction. However, as discussed above, Judge Neary's decision precludes my consideration of those portions of Burns's claims based on allegations that Robin falsely accused Burns of using illegal drugs, being addicted to drugs, or subjecting her to domestic abuse. Burns also claims that Robin made false statements about his not being a Christian and his having an affair. In his affidavit, Burns avers:

> Pastor Cliff Hoekstra, served as Custody fascinator [sic] between myself and Co-Defendant Robin Van Es relative to our son HRBM.  During the exchange I was told by Pastor Hoekstra that Robin would often make very negative comments about me, unsolicited.  On one occasion she told the pastor
>
> A.  "I was not a Christian"
> and
> B.  "I was having an Affair."

Burns Aff. at ¶ 1.  Hoekstra's statement to Burns is hearsay.  The Federal Rules of Evidence generally prohibit the admission of hearsay evidence.  *See* FED. R. EVID. 802. Burns has not suggested any exception that would permit the admission of Hoekstra's statement to him into evidence at trial.  "[I]nadmissible hearsay evidence cannot be used to defeat summary judgment." *Brunsting v. Mountains Corp.*, 601 F.3d 613, 817 (8th Cir. 2010); *see Brooks v. Tri-Systems, Inc.,* 425 F.3d 1109, 1111 (8th Cir. 2005).  Thus, Hoekstra's statement to Burns does not generate a genuine issue of material fact.

Burns also claims that Robin falsely accused him of sexually abusing HRBM in  a report to the Iowa Department of Human Services.  However, in his deposition the following colloquy took place between Robin's counsel and Burns:

> Q.    What evidence do you have that Robin McFarland reported those –
> A.    I don't know.
> Q.    -- the sexual abuse?
> A.    I don't know exactly who reported me.

Burns's Dep. at 276, Robin McFarland's App. at 237.  Since Robin's statements, made during her divorce proceedings, are protected by an absolute privilege, and Burns cannot establish that Robin made any defamatory statements about him outside of their divorce proceedings, Burns's defamation claims against her fail as a matter of law.  Because Burns's other claims against Robin are based on the same conduct and statements, they fail

for the same reason.  *See MSK EyEs Ltd.*, 546 F.3d at 544; *Pinto,* 650 F. Supp. at 309; *In re Moore*, 186 B.R. at 977; *Mahoney & Hagberg*, 729 N.W.2d at 310.  Thus, Robin's Motion for Summary Judgment is also granted.

## IV.  CONCLUSION

For the reasons discussed above, defendants' Motion to Strike is **denied** and defendants' Motions for Summary Judgment are **granted** and these cases are dismissed. Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 20th day of September, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA